846 P.2d 1082

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Thomas HARRISON, Defendant–Appellant.**

**No. 13714.**

Court of Appeals of New Mexico.

Dec. 29, 1992.

Certiorari Denied Feb. 3, 1993.

Tom Udall, Atty. Gen., Margaret McLean, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Sumita Mukhoty, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

BLACK, Judge.

Defendant appeals his conviction for driving while intoxicated (DWI). The issues on appeal are whether Defendant's conviction for DWI was supported by substantial evidence and what type of criminal intent must be proved in order to convict a person for DWI. Specifically, this appeal presents the Court with the issue of whether a person who is discovered unconscious or asleep at the wheel of an automobile, whose engine is on and tires are blocked, can be convicted of DWI. We hold that under those circumstances, there is sufficient evidence to support a conviction for DWI. We further hold that the criminal offense of DWI, NMSA 1978, Section 66–8–102(A), (C) (Cum.Supp.1992), is a strict liability crime. Therefore, we affirm Defendant's conviction.

FACTS.

Defendant and a friend, Jude Mari (Mari), were at a mutual friend's home. Upon preparing to leave the residence, Mari noticed that Defendant was intoxicated and offered to drive for him. They got into Defendant's car. Mari drove and Defendant was a passenger. Mari drove the vehicle for a short distance when the car stalled and would not restart. Mari testified that he steered the vehicle as close as he could to the curb and parked it. Mari further testified that he then took the keys out of the ignition, placed them under the seat, and placed bricks under the front and back tires of the vehicle. Mari instructed

Defendant not to leave the vehicle and then left in search of help.

Officer Longobardi was dispatched to the area in response to a call that an individual was slumped over the steering wheel of a vehicle. Longobardi testified that upon arriving at the scene, he saw Defendant's vehicle in the southbound lane of traffic, positioned at least ten feet away from the curb. Longobardi confirmed that bricks were underneath the tires of the vehicle on the driver's side.

Longobardi testified that, upon approaching the vehicle, he saw Defendant passed out behind the steering wheel of the car. He further testified that the key was in the ignition, the ignition was turned on, the transmission was in drive, and Defendant had his foot on the brake. The officer aroused Defendant, who spoke to Longobardi in a slurred manner. Longobardi smelled alcohol on Defendant's breath and noticed that Defendant had red, bloodshot eyes. On cross-examination, the officer admitted that he did not inquire of Defendant whether he had driven the vehicle to that location, or why the car was sitting there.

Officer Meloy accompanied Longobardi to the scene and confirmed his testimony that Defendant was passed out behind the wheel and that the keys were in the ignition with the engine running. Officer Meloy also testified that Defendant had his hands on the steering wheel.

After awakening Defendant, the officers asked him to submit to field sobriety tests which he refused. Defendant was transported to the Bernalillo County Detention Center where he submitted to breath tests which produced readings of .17 and .15.

In the metropolitan court proceedings, Defendant was found guilty of DWI. On appeal in the trial de novo in district court, Defendant and the State stipulated to all but one element of the charge of DWI. The sole issue before the district court was whether Defendant was "driving" the vehicle and was, therefore, in violation of the DWI statute, Section 66–8–102.

Relying on *Boone v. State*, 105 N.M. 223, 731 P.2d 366 (1986), the district court concluded that NMSA 1978, Section 66–8–102

(Cum.Supp.1992), makes it unlawful for any person who is under the influence to drive or be in actual physical control of a motor vehicle, and that motion of the vehicle was not required to support a conviction. The court also found that Defendant was in actual physical control of the vehicle. Furthermore, the district court concluded that the police officers had reasonable grounds to believe that Defendant had committed the offense of DWI and that the State had proven all of the elements of DWI beyond a reasonable doubt. Based on the above, the district court found Defendant guilty of DWI. This appeal followed.

## I. DEFENDANT WAS "DRIVING" A VEHICLE WITHIN THE MEANING OF SECTION 66–8–102.

■ Defendant was convicted of driving while intoxicated in violation of Section 66–8–102. Defendant's only defense to this charge is that he was not "driving" within the meaning of the statute. Our Supreme Court held that the defendant in *Boone*, who was found in the driver's seat of his automobile, stopped in a traffic lane late at night with the engine running, was guilty of "driving," stating:

We therefore hold that Section 66–8–102 makes it unlawful for any person who is under the influence of intoxicating liquor to drive or be in actual physical control of a motor vehicle or to exercise control over or steer a vehicle being towed by a motor vehicle; motion of the vehicle is not a necessary element of the offense.

105 N.M. at 226, 731 P.2d at 369 (footnote omitted); *see also* N.M.Att'y Gen.Op. 5858 (1953) (person may be guilty of DWI if physically handling the controls even though car not in motion).

Defendant contends that the district court's conclusion that he was "driving" a vehicle under Section 66–8–102 is not supported by substantial evidence. *See State v. Sparks*, 102 N.M. 317, 694 P.2d 1382 (Ct.App.1985) (substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion). Defendant first attempts to distinguish *Boone* on the basis that there was no

contention in that case that anyone other than the defendant was driving the vehicle, and the *Boone* defendant was conscious when discovered by the police. In contrast, in Defendant's case, he was discovered unconscious, and evidence was presented that only Mari had actually driven the vehicle. For the reasons that follow, we view these differences between the case at hand and *Boone* as distinctions without a legal difference.

Defendant appears to argue that the evidence to support his conviction was insufficient due to the fact that he was found unconscious behind the wheel. We note, as did the majority in *Boone*, that our Motor Vehicle Code, NMSA 1978, §§ 66–1–1 to – 8–140 (Repl.Pamp.1987 & 1989 & Cum. Supp.1992), defines a "driver" as one "who drives or is in actual physical control of a motor vehicle." Section 66–1–4.4(K) (Cum. Supp.1992). Several jurisdictions have determined that there is sufficient evidence to support a DWI conviction based on a defendant's "actual physical control" of a vehicle, even when the defendant is found unconscious or asleep at the wheel. *See, e.g., Mitchell v. State*, 538 So.2d 106 (Fla.Dist. Ct.App.1989) (per curiam) (defendant may be found in "actual physical control" when slumped over steering wheel, keys in ignition, but engine not running; car in parking lot); *Wofford v. State*, 739 P.2d 543 (Okla.Crim.App.1987) ("actual physical control" where defendant found asleep in car parked in road, with key in ignition); *see also* James O. Pearson, Jr., Annotation, *What Constitutes Driving, Operating, or Being in Control of Motor Vehicle for Purposes of Driving While Intoxicated Statute or Ordinance*, 93 A.L.R.3d 7, §§ 9[a], 15[a] (1979).

In reviewing the law from other jurisdictions on whether an unconscious or asleep individual can validly be determined to be in actual physical control of a vehicle, we find a discussion from the Oklahoma Court of Criminal Appeals to be apropos:

> We believe that an intoxicated person seated behind the steering wheel of a motor vehicle is a threat to the safety and welfare of the public. The danger is less than where an intoxicated person is actually driving a vehicle, but it does exist. The defendant when arrested may have been exercising no conscious violation with regard to the vehicle, still there is a legitimate inference to be drawn that he placed himself behind the wheel of the vehicle and could have at any time started the automobile and driven away.

*Hughes v. State*, 535 P.2d 1023, 1024 (Okla.Crim.App.1975).

In the case at hand, Mari testified that he left Defendant in the passenger seat, stashed the ignition keys under the driver's seat, and instructed Defendant not to leave the vehicle. However, when the police officers discovered Defendant, he was seated in the driver's seat, the engine was running, the transmission was in the "drive" position, and Defendant had his foot on the brake. It can reasonably be inferred that Defendant actively searched for the vehicle keys, started the engine, and was prepared to drive away before he passed out or fell asleep. In other words, Defendant's efforts were evidence of his exercise of actual physical control over the vehicle.

The fact that the officers discovered no signs that the vehicle had been moved by Defendant is irrelevant. *See Boone*, 105 N.M. at 226, 731 P.2d at 369 (DWI does not require movement of the vehicle). Furthermore, the fact that the only evidence presented concerning driving focused on Mari and not Defendant is also irrelevant. *See id.* (DWI committed when a person under the influence drives or is "in actual physical control" of the vehicle).

Based on the above, we hold that, for purposes of a DWI conviction, a defendant may exercise "actual physical control" over a vehicle when he is discovered behind the wheel of an automobile, either passed out or asleep, under these circumstances. Therefore, there was sufficient evidence to support the district court's finding that Defendant was in actual physical control of the vehicle. *See Sparks*, 102 N.M. at 320, 694 P.2d at 1385.

## II. SECTION 66–8–102 DOES NOT REQUIRE INTENT.

■ Defendant next argues that there was insufficient evidence to support his

conviction because the State failed to prove that he intended to drive the car. Although the parties appear to use specific intent and general intent interchangeably, general intent is all that is at issue in this case. DWI does not require an intent to do a further act or achieve a further consequence, such as is ordinarily required in specific intent crimes. *See* Mark B. Thompson III, *The Lazy Lawyer's Guide to Criminal Intent in New Mexico,* Judicial Pamphlet 14, addendum at 332 (1974). Defendant argues that since he was not conscious of his wrongdoing, he cannot have the intent he says is required to sustain a DWI conviction. We disagree.

New Mexico's DWI statute states in part that "[i]t is unlawful for any person who is under the influence of intoxicating liquor to drive any vehicle within this state," and further, "[i]t is unlawful for any person who has one-tenth of one percent or more by weight of alcohol in his blood to drive any vehicle within this state." Section 66–8–102(A), (C). Our primary focus is to give effect to the intention of the legislature. *See State v. Richardson,* 113 N.M. 740, 832 P.2d 801 (Ct.App.), *cert. denied,* 113 N.M. 690, 831 P.2d 989 (1992). In doing so, we examine the language used in the relevant statute. *Id.* Section 66–8–102 makes absolutely no reference whatsoever to a required intent on the part of an accused. *See generally State v. Alderette,* 111 N.M. 297, 804 P.2d 1116 (Ct.App.1990) (appellate court will not read into statute language which is not there). Rather, the statute clearly provides that the only thing necessary to convict a person of DWI is proof that the defendant was driving a vehicle either under the influence of intoxicating liquor or while he had a certain percentage of alcohol in his blood.

 A strict liability crime is one which imposes a criminal sanction for an unlawful act without requiring a showing of criminal intent. *State v. Lucero,* 87 N.M. 242, 531 P.2d 1215 (Ct.App.), *cert. denied,* 87 N.M. 239, 531 P.2d 1212 (1975). The legislature may forbid the doing of an act and make its commission criminal without regard to the intent of the wrongdoer.

*State v. Lucero,* 98 N.M. 204, 647 P.2d 406 (1982). The rationale for making an act criminal without regard to the perpetrator's intent is that the public interest is so compelling, or the potential harm so great, that the public interest must override the individual's interests. *State v. Barber,* 91 N.M. 764, 581 P.2d 27 (Ct.App.1978). The standard for determining whether a statute is a strict liability statute involves ascertaining whether there is a clear legislative intent that the act does not require any degree of mens rea. *State v. Herrera,* 111 N.M. 560, 807 P.2d 744 (Ct.App.), *cert. denied,* 111 N.M. 529, 807 P.2d 227 (1991).

Obviously, the public's interest in deterring individuals from driving while intoxicated is compelling. This is due to the dangers of the practice, not only to those who operate motor vehicles while under the influence, but also to those innocent individuals who are injured or killed as a result of DWI accidents. The fact that innocent individuals are oftentimes injured or killed, and their families and loved ones made to suffer, makes the potential harm from DWI much greater than if only the irresponsible person who drove while intoxicated was put in danger. We have recognized that the policy behind the DWI statute is to prevent individuals from driving or exercising actual physical control over a vehicle when they, either mentally or physically, or both, are unable to exercise the clear judgment and steady hand necessary to handle a vehicle with safety both to themselves and the public. *See Richardson,* 113 N.M. at 742, 832 P.2d at 803; *see also Incorporated County of Los Alamos v. Johnson,* 108 N.M. 633, 776 P.2d 1252 (1989) (recognizing public policy of removing DWI drivers from New Mexico roads in order to protect the public). We believe that the legislature recognized this significant public interest and potential harm when it drafted Section 66–8–102 and made no mention of the need to prove a required intent in order to secure a conviction.

Moreover, we believe adopting Defendant's position and interpreting Section 66–8–102 as a crime requiring intent, rather than a strict liability crime, would defeat the legislature's purpose and achieve ab-

surd results. *See generally Alderette*, 111 N.M. at 299, 804 P.2d at 1118 (appellate court will not construe a statute to defeat its intended purpose or achieve absurd results). Reduced to its essence, Defendant's argument is that he could not be convicted of DWI because he was too intoxicated to form the conscious intent to drive drunk. To allow persons charged with DWI the opportunity to present such a defense would be absurd and undoubtedly contrary to the statute's purpose. *See State v. West*, 416 A.2d 5, 7–8 (Me.1980).

Section 66–8–102(C) is referred to as the "per se" violation. *See* Rule 14–4503 committee commentary. The "per se" label has also been adopted in other jurisdictions. *See, e.g., State v. Bernhardt*, 245 N.J.Super. 210, 584 A.2d 854 (Ct.App.Div.), *cert. denied*, 126 N.J. 323, 598 A.2d 883 (1991); *State v. Carter*, 810 S.W.2d 197 (Tex.Crim.App.1991) (en banc). This is apparently judicial shorthand for saying driving while intoxicated is a general intent crime and no specific mens rea is required to support a conviction. *See State v. Young*, 8 Haw. App. 145, 795 P.2d 285, *cert. denied*, 833 P.2d 901 (1990); 1 Richard E. Erwin et al., *Defense of Drunk Driving Cases* § 1.05 (3d ed. 1992).

Other courts interpreting similar legislation have specifically recognized DWI as a strict liability offense, especially where the crime is defined solely in terms of driving with a blood alcohol level in excess of a defined percentage. *See, e.g., People v. Thorson*, 145 Ill.App.3d 764, 99 Ill.Dec. 729, 496 N.E.2d 304 (1986); *Burns v. State*, 556 N.E.2d 955 (Ind.Ct.App.1990); *City of Defiance v. Kretz*, 60 Ohio St.3d 1, 573 N.E.2d 32 (1991). The Kansas Court of Appeals found that the fact the legislature failed to specify any intent requirement in defining the offense was an indication of legislative intent to impose strict liability:

We conclude by its omission of intent as an element in K.S.A.1984 Supp. 8–1567 our legislature intended driving while under the influence to be an absolute liability offense. Therefore, we reject defendant's complaints that the city failed to prove intent.

*City of Wichita v. Hull*, 11 Kan.App.2d 441, 724 P.2d 699, 702 (1986). As we have noted, Section 66–8–102 likewise contains no intent requirement and we also believe the legislature intended to create a strict liability offense. The State was therefore not required to prove that Defendant intended to drive. *State v. Young*, 795 P.2d at 290–91; *State v. Superior Court*, 153 Ariz. 119, 735 P.2d 149 (Ct.App.1987).

CONCLUSION.

We believe there was substantial evidence to support the district court's finding that Defendant was in control of a motor vehicle, and therefore, driving. In reviewing the language of the DWI statute, we also believe that the legislature drafted Section 66–8–102 in order to make the act of driving while intoxicated a crime, in and of itself, regardless of the intent of the accused. Based on the above, we hold that the offense of DWI is a strict liability crime. Defendant's conviction is affirmed.

IT IS SO ORDERED.

PICKARD and FLORES, JJ., concur.