1999-NMCA-069

980 P.2d 1068

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Anthony RIOS, Defendant–Appellant.**

**No. 18,539.**

Court of Appeals of New Mexico.

March 22, 1999.

Certiorari Denied, No. 25,694,
May 24, 1999.

Patricia A. Madrid, Attorney General, James O. Bell, Assistant Attorney General, Santa Fe, for Appellee.

Adam G. Kurtz, Albuquerque, for Appellant.

## OPINION

APODACA, Judge.

{1} The metropolitan court, as a court of record, convicted Defendant for driving while under the influence of intoxicating liquor (DWI) contrary to NMSA 1978, § 66–8–102 (1993). Defendant appealed to the district court, which affirmed the conviction. He raises two issues on appeal to this court: (1) he was entitled as a matter of law to assert the defense of duress to the DWI charge and (2) there was insufficient evidence to refute this defense. We hold that the common-law defense of duress is available to defendants charged with the strict liability crime of DWI. We conclude, however, that substantial evidence supported Defendant's conviction, even considering the defense, and we therefore affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{2} After leaving a bar at closing time, Defendant claims he and his brother were threatened with violence by an angry mob. Both of them then sought refuge in Defendant's truck. As the alleged attack continued, Defendant testified that he started the vehicle and began to drive "slowly" out of the parking lot. Almost immediately, police arrived on the scene, determined Defendant's blood-alcohol level to be .14, and arrested him for DWI.

{3} The metropolitan court, acting as fact finder in a non-jury trial, found that Defendant had not acted reasonably in the face of the alleged threat. As a result, the court found that Defendant's act of driving while under the influence was not an excusable result of duress. Defendant appealed to the district court, claiming error in the metropolitan court's review of the evidence. The district court, however, did not evaluate the evidence. Instead, it held as a matter of law that duress was unavailable to a defendant charged with DWI.

## II. DISCUSSION

### A. Availability of Duress Defense to a DWI Defendant

{4} The question of whether the defense of duress is available to a defendant in a DWI case is an issue this Court has not previously been called upon to address. The specific issue is whether it is of legal consequence that a defendant charged with DWI

allegedly violated the law only to escape a threat of immediate death or great bodily harm. *Compare Esquibel v. State,* 91 N.M. 498, 501, 576 P.2d 1129, 1132 (1978) (holding "that duress is a defense available in New Mexico except when the crime charged is a homicide or a crime requiring intent to kill"), *overruled on other grounds by State v. Wilson,* 116 N.M. 793, 796, 867 P.2d 1175, 1178 (1994), *with State v. Lucero,* 98 N.M. 204, 206–07, 647 P.2d 406, 408–09 (1982) (holding that duress is unavailable to defendants charged with the strict liability offense of child abuse). This is a question of law that we review de novo. *See State v. Ogden,* 118 N.M. 234, 240, 880 P.2d 845, 851 (1994).

### 1. Strict Liability Crimes

{5} "Criminal liability is normally based upon the concurrence of two factors, an evil-meaning mind [and] an evil-doing hand." *United States v. Bailey,* 444 U.S. 394, 402, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) (quoting *Morissette v. United States,* 342 U.S. 246, 251, 72 S.Ct. 240, 96 L.Ed. 288 (1952)) (internal quotation marks omitted). Nonetheless, it is well recognized that our Legislature has the constitutional authority to establish strict liability crimes. *See Lucero,* 98 N.M. at 206, 647 P.2d at 408 ("[T]he Legislature may forbid the doing of an act and make its commission criminal without regard to the intent of the wrongdoer."). The principal effect of criminalizing acts without requiring criminal intent is to ease the prosecution's burden in proving its case. *See id.* ("[T]he sole question for the jury in a strict liability offense is whether [it] believes the defendant committed the act prescribed by the statute. If it finds that the defendant did commit the act, then the jury is obliged to bring a guilty verdict."). The principal reason for establishing strict liability crimes "is that the public interest in the matter is so compelling or that the potential for harm is so great, that public interests override individual interests." *Id.*

{6} This Court has held that DWI is a strict liability offense. *See State v. Harrison,* 115 N.M. 73, 77–78, 846 P.2d 1082, 1086–87 (Ct.App.1992) ("We believe that the legislature recognized this significant public interest [in deterring drunk driving] and potential harm when it drafted [the DWI statute] and made no mention of the need to prove a required intent in order to secure a conviction."). Consequently, the State need not show a level of criminal intent to obtain a conviction for DWI. It must show only that the accused exercised control of a motor vehicle while his or her blood contained a certain percentage of alcohol. *See id.;* § 66–8–102(C) ("It is unlawful for any person who has an alcohol concentration of eight one-hundredths or more in his blood or breath to drive any vehicle within this state.").

### 2. The Duress Defense

{7} Without contesting the degree of his intoxication, Defendant maintained in both the metropolitan and district courts that he drove under duress. In New Mexico, this defense typically consists of three elements: (1) the defendant committed the crime under threat, (2) the defendant feared immediate bodily harm to himself or others if he failed to commit the crime, and (3) a reasonable person in the defendant's position would have acted in the same way under the circumstances. *See State v. Duncan,* 111 N.M. 354, 355, 805 P.2d 621, 622 (1991); UJI 14–5130 NMRA 1999 (duress in nonhomicide crimes). As a basic rule, if a criminal defendant presents sufficient prima facie evidence to support this defense, he or she "is entitled to instruction on that theory." *State v. Castrillo,* 112 N.M. 766, 769, 819 P.2d 1324, 1327 (1991).

### 3. Duress as Defense to DWI

{8} The great weight of authority supports the conclusion "that duress is a defense available in New Mexico except when the crime charged is a homicide or a crime requiring intent to kill." *Esquibel,* 91 N.M. at 501, 576 P.2d at 1132; *cf.* UJI 14–5130 (noting in committee commentary that "UJI 14–5130 applies to all crimes, other than homicide, a crime requiring an intent to kill or escape from a penitentiary"); *see also State v. Toscano,* 74 N.J. 421, 378 A.2d 755, 761 (1977); *People v. Pena,* 197 Cal.Rptr. 264, 269 (Cal.App. Dep't Super.Ct.1983); *State v. St. Clair,* 262 S.W.2d 25, 27 (Mo.

1953). Indeed, our Supreme Court has recently noted this rule. *See Reed v. State ex rel. Ortiz,* 1997–NMSC–055, ¶ 95, 124 N.M. 129, 947 P.2d 86, *rev'd on other grounds,* 524 U.S. 151, 118 S.Ct. 1860, 141 L.Ed.2d 131 (1998); *see also State v. Baca,* 114 N.M. 668, 673, 845 P.2d 762, 767 (1992) (noting favorably *Esquibel* rule); *Castrillo,* 112 N.M. at 771 n. 3, 819 P.2d at 1329 n. 3. That being the case, it would appear that duress should be equally available when the crime charged is proscribed by common law or by a statute imposing strict liability. The State, however, relying on our Supreme Court's holding in *Lucero,* decided in 1982, argues that duress is unavailable to strict liability defendants because in such instances, the State need not prove intent.

{9} In *Lucero,* our Supreme Court held that "duress is not a defense to [the strict liability offense of] child abuse because the mental state of the defendant is not essential." *Lucero,* 98 N.M. at 207, 647 P.2d at 409. Phrased differently, the court in *Lucero* reasoned that, since strict liability offenses do not require the state to put forward evidence regarding intent, defenses turning on a defendant's mental state are not allowed. *Lucero* thus appears to require holding in this appeal that the defense of duress is not available to Defendant. For the reasons that follow, however, we determine that *Lucero's* holding is not dispositive of this appeal.

{10} We first note that although this 1982 decision has not been overruled, no reported decision has ever cited it for the wholesale prohibition of duress as a defense to all strict liability criminal charges as the State now advocates in this appeal. This lack of reliance is notable especially since our Supreme Court has been presented with appeals directly implicating *Lucero's* purported holding. *See Baca,* 114 N.M. at 674, 845 P.2d at 768 (noting "wholesale rejection of the duress defense" is unnecessary in cases where a defendant is charged with "a crime closely approaching a strict liability crime"); *Castrillo,* 112 N.M. at 771, 819 P.2d at 1329 ("We merely evaluate the different elements [of the duress defense] in the context of the strict liability crime of felon in possession of a firearm."). On these occasions, the Su-

preme Court failed even to note *Lucero* and instead reiterated the *Esquibel* rule. *See Baca,* 114 N.M. at 673, 845 P.2d at 767; *Castrillo,* 112 N.M. at 771 n. 3, 819 P.2d at 1329 n. 3. It therefore appears that the Supreme Court has distanced itself from, if not overruled *sub silentio, Lucero* and replaced its analysis of duress with more recent pronouncements. We therefore determine that *Lucero* is not binding in the context of a DWI case. *Cf. State ex rel. Martinez v. City of Las Vegas,* 118 N.M. 257, 258–59, 880 P.2d 868, 869–70 (Ct.App.) (noting lack of Supreme Court reaffirmance of older decision as reason to depart from aged precedent), *cert. granted,* 118 N.M. 430, 882 P.2d 21 (1994).

{11} We also observe that commentators have specifically criticized *Lucero* as a misanalysis of the law of duress. *See* Heather R. Skinazi, *Not Just a "Conjured Afterthought": Using Duress as a Defense for Battered Women Who "Fail to Protect",* 85 Cal.L.Rev. 993, 1039–41 (1997); Martin R. Gardner, *The Mens Rea Enigma: Observations on the Role of Motive in the Criminal Law Past and Present,* 1993 Utah L.Rev. 635, 738–41 (1993). The crux of this criticism is that *Lucero* fundamentally misunderstood the defense. In so doing, it "fell into a common mistake: it viewed duress as negating the mens rea required for criminal culpability rather than recognizing duress as an excuse [that] negates the culpability factor required for the offense." Skinazi, *supra,* at 1040 (footnote omitted); *see also* Gardner, *supra,* at 741.

{12} We consider these observations well-founded. A defendant pleading duress is *not* attempting to disprove a requisite mental state. *See United States v. Johnson,* 956 F.2d 894, 897 (9th Cir.1992) (noting that defense of duress "assumes that the defendant has voluntarily performed the criminal act"). Defendants in that context are instead attempting to show that they ought to be excused from criminal liability because of the circumstances surrounding their intentional act. *See United States v. Bailey,* 585 F.2d 1087, 1111 (D.C.Cir.1978) (Wilkey, J., dissenting) ("The theoretical basis for the duress defense is excuse.... [A]l-

though a defendant has the mental state [that] the crime requires, his conduct ... is excused or justified because he has ... avoided a harm of greater magnitude.") (emphasis omitted), *rev'd,* 444 U.S. at 397, 100 S.Ct. 624; *see also* Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 5.3, at 614–15 (1986) (noting that duress does not negate mental state or volitional act, but instead justifies the intended criminal act). *But cf. United States v. Mitchell,* 725 F.2d 832, 835 (2d Cir.1983) (noting duress defense "raises broad philosophical issues concerning the nature of voluntary action for purposes of criminal responsibility and the appropriate conditions for holding a person morally blameworthy"; further noting disagreement among state jurisdictions regarding the relation of mens rea and duress). We consider this exposition of the defense compelling and one that we will adopt in this appeal.

{13} We also note that we have not uncovered any extrajurisdictional support for *Lucero* or the State's argument in this appeal. Even *State v. Fogarty,* 128 N.J. 59, 607 A.2d 624 (1992), a New Jersey case on which the State relies, does not support the State's position. *Fogarty* equivocates on the legal question here raised and finds instead, as a factual matter, that the defendant failed to present sufficient evidence to establish duress. *See id.* at 629–30 (finding it unnecessary to reach the question of whether duress was available in DWI cases as "defendant has failed to establish that he acted under duress in this case").

{14} Other courts dealing head-on with this issue have explicitly held that, subject to strict evidentiary requirements, the defense of necessity is permissible. *See Pena,* 149 Cal.App.3d Supp. 14, 197 Cal.Rptr. at 271–72 (duress is a defense to DWI); *Toops v. State,* 643 N.E.2d 387, 389–90 (Ind.Ct.App.1994) (holding if defendant meets evidentiary threshold in assertion of affirmative defense, he is entitled to a jury instruction on necessity in DUI case); *State v. Shotton,* 142 Vt. 558, 458 A.2d 1105, 1107 (1983) (necessity is a defense to DWI); *State v. Olson,* 79 Or.App. 302, 719 P.2d 55, 57 (1986) (choice of evils defense available to DUI defendant); *State v.*

*Riedl,* 15 Kan.App.2d 326, 807 P.2d 697, 699 (1991) (holding that compulsion is a defense to absolute liability traffic offenses). Also, *see generally* Michael J. Yaworsky, Annotation, *Driving While Intoxicated: "Choice of Evils" Defense That Driving Was Necessary to Protect Life or Property,* 64 A.L.R.4th 298 passim (1989) (discussing defense of necessity in DWI cases); *but compare id.* at § 1(a) (asserting legal distinction between defenses of necessity and duress) *with* Steven J. Gaynor, Annotation, *Automobiles: Necessity or Emergency as Defense in Prosecution for Driving Without Operator's License or While License is Suspended,* 7 A.L.R.5th 73, 81 (1992) (abandoning previously asserted distinction between necessity and duress); *see also Bailey,* 444 U.S. at 409–10, 100 S.Ct. 624 (noting that while "[c]ommon law historically distinguished between the defenses of duress and necessity .... [m]odern cases have tended to blur the distinction").

{15} Other jurisdictions have tacitly approved of the defense but have held that defendants failed to establish the factual prerequisites and were therefore not entitled to a jury instruction regarding duress. *See Reeve v. State,* 764 P.2d 324, 326 (Alaska Ct.App.1988) (holding in DWI case that necessity defense was unavailable where defendant failed to show that she brought her conduct into compliance with the law after situation creating necessity had passed); *State v. Fee,* 126 N.H. 78, 489 A.2d 606, 607 (1985) (holding in DWI case that defense of competing harms was unavailable where threatened harm was only speculative and uncertain); *see also State v. Alexander,* 24 Kan.App.2d 817, 953 P.2d 685, 688–89 (1998) (holding that defense of compulsion was not available to defendant, a habitual violator, where he illegally drove his vehicle after cause of compulsion had passed). In summary, we determine the breadth of extrajurisdictional analyses of this issue is directly contrary to *Lucero* and to the State's position in this appeal.

{16} We conclude that *Lucero* is not controlling and apply the Supreme Court's more recent reasoning on this point: "We do not believe that a wholesale rejection of the duress defense ... is necessary." *Baca,* 114

N.M. at 674, 845 P.2d at 768. "Application of the concept of duress to a charge of [a strict liability crime] does not require us to develop special rules or alter the law of duress. We merely evaluate the different elements in the context of the strict liability crime[.]" *Castrillo*, 112 N.M. at 771, 819 P.2d at 1329. We must approach the application of this defense to DWI charges with care so as not to "vitiat[e] the protectionary purpose of the strict liability statute." *Baca*, 114 N.M. at 674, 845 P.2d at 768.

{17} *Baca*'s narrowed articulation of the duress defense achieves this purpose. Under this test:

the defendant must produce sufficient evidence that: (1) he was under an unlawful and imminent threat of death or serious bodily injury; (2) he did not recklessly place himself in a situation that would likely compel him to engage in the criminal conduct; (3) he did not have a reasonable legal alternative (in other words, he could not have reasonably avoided the threatened harm or the criminal conduct in which he engaged); and (4) a direct causal relationship existed between the criminal action and the avoidance of the threatened harm.

*Id.* at 674–75, 845 P.2d at 768–69. " '[T]he keystone of the analysis is that the defendant must have no alternative—either before or during the event—to avoid violating the law.' " *Id.* at 675, 845 P.2d at 769 (quoting *United States v. Singleton*, 902 F.2d 471, 473 (6th Cir.1990)). This view of the law takes into consideration " 'the nature of the crime, the evil the crime is designed to prevent, and the nature of the defense.' " *Id.* (quoting *Castrillo*, 112 N.M. at 773, 819 P.2d at 1331).

#### 4. State's Fear of Pretextual Defenses

{18} The State argues that permitting the defense of duress in DWI cases would lead to an explosion of "fabricated" or "pretextual defenses." We consider this concern unfounded for the reason that pretextual defenses will fall of their own weight. The State, for example, raises the specter of drunk drivers starting bar brawls in anticipation of mounting pretextual duress defenses to DWI charges. If the State were to face

such arguments down the road, however, its response would be clear—it is a prima facie element of duress that the defendant did not recklessly create the situation from which he or she attempts to flee. *See id.* Besides, even if faced with such a case, the State has at its disposal an arsenal of other applicable charges that it could bring to bear, for example assault, battery, or mayhem.

{19} The duress defense is "[a]mong the oldest principles of criminal law." *Reed*, 1997–NMSC–055, ¶ 95, 124 N.M. 129, 947 P.2d 86. We consider its wholesale foreclosure more troubling than the possibility that DWI defendants may attempt to lay a plausible factual foundation for a duress defense. On this point, we note the dissenting comments of Justice Stein of the New Jersey Supreme Court:

A conviction for driving while intoxicated (DWI) ordinarily is not an occasion for hand-wringing about issues of fundamental fairness and due process. . . .

But once in a great while a DWI case comes along that presents facts so bizarre and remote from the public policy underlying the law that even a Court as committed as this one to the strict enforcement of the drunk-driving statutes can pause to make certain that no injustice has been done.

*Fogarty*, 607 A.2d at 631–32 (Stein, J., dissenting). We agree with Justice Stein's observation. The requirement of proving criminal intent has been read out of certain statutory offenses. This Court, however, should not read into a statute a prohibition of common-law defenses to which a defendant may rarely but justifiably be entitled.

#### B. Substantial Evidence Supports Defendant's Conviction

{20} We now turn to Defendant's second contention that insufficient evidence refuted his defense of duress. Defendant argues that he presented a prima facie showing of the defense of duress to the metropolitan court. We agree. Additionally, having reviewed the tapes of the metropolitan court proceeding, we believe that court indeed considered Defendant's defense. The State, too, acknowledges that the metropolitan court allowed Defendant to present evidence on du-

**340**

ress. Unpersuaded by that evidence, the metropolitan court nonetheless convicted Defendant.

{21} Based on the requirement that "[t]he burden is on the state to prove beyond a reasonable doubt that the defendant did not act under such reasonable fear," UJI 14–5130, Defendant argues:

> a guilty verdict in this matter required the trial court to find evidence showed beyond a reasonable doubt that:
>
> (1) the defendant was not forced to commit a crime under threats;
>
> (2) the defendant did not fear immediate great bodily harm to himself or another person if he did not commit the crime; and
>
> (3) a reasonable person would not have acted in the same way under the circumstances.

Defendant cites no authority supporting his expansive interpretation of the State's burden contained in the jury instruction, and we decline to adopt it. *See State v. Herbstman*, 126 N.M. 683, 974 P.2d 177, 182 (Ct.App. 1998) (considering interpretation of rule unpersuasive where no cited authority supported position); *see also State v. Nelson*, 121 N.M. 301, 303, 910 P.2d 935, 937 (Ct.App. 1995) (providing that the court should apply the plain meaning of statute where its import is clear). Rather, the State had the burden to prove "all of the elements of DWI beyond a reasonable doubt." *See Harrison*, 115 N.M. at 75, 846 P.2d at 1084.

{22} It was then Defendant's burden to adduce sufficient evidence to place the question of duress before the fact finder. *See Esquibel*, 91 N.M. at 501, 576 P.2d at 1132; *cf. Castrillo*, 112 N.M. at 769, 819 P.2d at 1327 ("If the evidence supports [duress], a defendant is entitled to instruction on that theory."). Consequently, Defendant was required to present evidence regarding each element of the prima facie case. *Cf. Duncan*, 111 N.M. at 355, 805 P.2d at 622 ("The term 'element' when used with reference to a defense means a 'constituent part' of the defense ... [, and] is synonymous with the term 'requirement'[.]" (citations omitted)). As we previously noted, Defendant successfully presented a prima facie showing of duress in the metropolitan court. The court,

however, having considered Defendant's defense, rejected it as not being supported by the evidence.

{23} As we noted previously, the district court did not review the evidence presented to the metropolitan court but instead held that duress was unavailable to Defendant as a matter of law. We have held otherwise in this opinion. Because the district court erred in that regard and did not consider the question of the sufficiency of the evidence on which Defendant was convicted, it would appear at first glance that we should remand the case to the district court to consider that question. As a reviewing court, however, we are in as good a position as the district court to examine the evidence contained in the metropolitan court record. *See City of Albuquerque v. Jackson Bros., Inc.*, 113 N.M. 149, 151, 823 P.2d 949, 951 (Ct.App. 1991). Doing so in this appeal would promote court efficiency and a speedy disposition. We therefore proceed to consider whether the evidence supported Defendant's conviction.

{24} In reviewing a trial court's verdict, this Court will "not substitute its judgment for that of the [fact finder]." *State v. Lankford*, 92 N.M. 1, 2, 582 P.2d 378, 379 (1978). Instead, we examine the evidence in a light favorable to affirmance and determine only whether substantial record evidence exists to support the conviction below. *See State v. Apodaca*, 118 N.M. 762, 765–66, 887 P.2d 756, 759–60 (1994); *see also State v. Weber*, 76 N.M. 636, 644, 417 P.2d 444, 449 (1966) (noting presumption of correctness in the decisions of a trial court). Upon this review, we affirm the metropolitan court's conviction.

{25} As noted above, New Mexico law establishes four elements to duress in the strict liability context: (1) the defendant acted under unlawful and imminent threat of death or serious bodily injury, (2) he did not find himself in a position that compelled him to violate the law due to his own recklessness, (3) he had no reasonable legal alternative, and (4) his illegal conduct was directly caused by the threat of harm. *See Baca*, 114

N.M. at 674–75, 845 P.2d at 768–69. The second and third elements of this test echo, while narrowing, the basic "reasonable person" standard prescribed by Supreme Court rule. *See* UJI 14–5130 (requiring proof that "a reasonable person would have acted in the same way under the circumstances").

{26} The metropolitan court expressed strong doubt whether Defendant even faced a sufficiently imminent and perilous harm. Jesse Palacio, the only witness besides Defendant and his brother who testified concerning the events prior to the time Defendant drove his vehicle, stated that only he and perhaps one other person approached Defendant's truck. Palacio testified that he simply grabbed hold of the driver's side mirror. The arresting officer testified that Defendant was unharmed and that no one was fighting or threatening Defendant's vehicle when he arrived. Defendant introduced no evidence that he considered any alternative to driving his vehicle while legally drunk.

{27} In evaluating the reasonableness of Defendant's actions, the metropolitan court stated:

> [D]id [Defendant] act reasonably as a reasonable, objective person would do? An objective standard, I think that's the case law, it suggests that that's the way you analyze it ... I can't say that the actions of jumping behind the wheel of a vehicle and taking off in the middle of a crowded parking lot is what most people would do.

Defendant asserts that the metropolitan court initially articulated the reasonable person standard appropriately by considering whether Defendant acted reasonably. He complains, however, that considering the actions of "most people" rather those of a "reasonable person" indicated that the metropolitan court applied an inappropriately harsher standard. We disagree. The entirety of the context signifies that the metropolitan court did not base its rationale on an improper standard. Because the court used the words "most people" on one occasion does not necessarily mean that it failed to recognize or apply the appropriate reasonable person analysis. We thus reject Defendant's arguments on the sufficiency-of-the-evidence question and hold that substantial evidence supported Defendant's conviction.

## III. CONCLUSION

{28} We hold that the district court erred in ruling, as a matter of law, that the defense of duress was unavailable against the strict liability charge of DWI. We nonetheless affirm the district court, which affirmed the metropolitan court's conviction, because, having reviewed the evidence adduced in the metropolitan court, we determine that substantial evidence supported the conviction despite consideration of the duress defense.

{29} **IT IS SO ORDERED.**

BOSSON and WECHSLER, JJ., concur.