**Certiorari Granted, February 19, 2018, No. S-1-SC-36865**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2018-NMCA-018**

**Filing Date: December 13, 2017**

**Docket No. A-1-CA-34419**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellee,**

**v.**

**CRYSTAL ORTIZ,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stan Whitaker, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**FRENCH, Judge.**

**{1}** Defendant Crystal Ortiz appeals her convictions for great bodily harm by vehicle (driving while intoxicated (DWI)), contrary to NMSA 1978, Section 66-8-101(B), (C) (2004, amended 2016); aggravated battery (deadly weapon-vehicle), contrary to NMSA 1978, Section 30-3-5(C) (1969); and aggravated DWI, contrary to NMSA 1978, Section 66-8-

1

102(A), (B) (2010, amended 2016). Defendant did not appeal her conviction for leaving the scene of an accident (great bodily harm). On appeal, Defendant argues that: (1) her convictions violate her right to be free from double jeopardy, and (2) the district court erred in refusing to grant her duress defense instructions. This case requires this Court to decide whether Defendant was entitled to a duress instruction on great bodily harm by vehicle, aggravated battery, and the strict liability crime of aggravated DWI. We hold that the duress instruction was applicable to the facts of the case and should have been given for aggravated battery (deadly weapon-vehicle) and great bodily harm by vehicle (DWI) based on Defendant's prima facie evidence. We affirm Defendant's conviction for the strict liability crime of aggravated DWI. Because we reverse Defendant's appealed convictions for aggravated battery (deadly weapon-vehicle) and great bodily harm by vehicle (DWI) based on instructional error, we do not address Defendant's double jeopardy claim.

## BACKGROUND

**{2}**     Prior to trial, Defendant alerted the district court that she intended to present the affirmative defense of duress as she was forced to flee from Mr. Hughes (Victim) fearing great bodily harm. Again, after the defense rested, Defendant and the State discussed the duress defense with the district court. The district court denied Defendant's duress instructions the next day before closing arguments.

**{3}**     On appeal, Defendant challenges the district court's denial of the duress instruction for three of her convictions: great bodily harm by vehicle, aggravated battery, and aggravated DWI. Defendant argues that the district court erred in denying the duress instructions, claiming that she had presented a prima facie case for the giving of the duress instructions and that a reasonable view of the evidence supported her defense.

## STANDARD OF REVIEW

**{4}**     "The propriety of jury instructions given or denied is a mixed question of law and fact" and is "reviewed de novo." *State v. Munoz*, 1998-NMSC-041, ¶ 8, 126 N.M. 371, 970 P.2d 143 (internal quotation marks and citations omitted). "When considering a defendant's requested instructions, we view the evidence in the light most favorable to the giving of the requested instruction." *State v. Wyatt B.,* 2015-NMCA-110, ¶ 33, 359 P.3d 165, citing *State v. Romero*, 2005-NMCA-060, ¶ 8, 137 N.M. 456, 112 P.3d 1113; *see State v. Hill*, 2001-NMCA-094, ¶ 5, 131 N.M. 195, 34 P.3d 139. Our Supreme Court has recognized that "[t]he duress defense is similar, in this context, to other justification defenses," such as necessity, coercion, or self-defense. *State v. Castrillo*, 1991-NMSC-096, ¶ 6, 112 N.M. 766, 819 P.2d 1324.

**{5}**     "The defense of duress is a question for the jury." *Esquibel v. State*, 1978-NMSC-024, ¶ 9, 91 N.M. 498, 576 P.2d 1129, *overruled on other grounds by State v. Wilson*, 1994-NMSC-009, ¶ 6, 116 N.M. 793, 867 P.2d 1175. "To warrant submission to the jury of the defense of duress, a *defendant* must make a prima facie showing that [she] was in fear of

immediate and great bodily harm to [herself] . . . and that a reasonable person in [her] position would have acted the same way under the circumstances." *Castrillo*, 1991-NMSC-096, ¶ 4 (emphasis added); *see also State v. Rios*, 1999-NMCA-069, ¶ 7, 127 N.M. 334, 980 P.2d 1068. New Mexico courts have "required the state to disprove such defenses beyond a reasonable doubt." *State v. Lopez*, 1990-NMCA-016, ¶ 9, 109 N.M. 578, 787 P.2d 1261."[T]he district court must instruct on the defense [of duress] only if it is raised by the defendant and only if, on the basis of the evidence at trial (whether offered by the state or by the defendant), a reasonable juror could have a reasonable doubt arising from the defense." *Id*. "The test is not how the judge would weigh the [duress] evidence as a fact[-]finder; the true test is whether any juror could be justified in having a reasonable doubt about whether the accused acted [under duress]." *State v. Guerra*, 2012-NMSC-014, ¶ 14, 278 P.3d 1031. "If any reasonable minds could differ, the instruction should be given." *State v. Rudolfo*, 2008-NMSC-036, ¶ 27, 144 N.M. 305, 187 P.3d 170.

## DISCUSSION

**{6}** Defendant argues that her trial testimony and evidence, when viewed in the light most favorable to the giving of the requested instruction, was sufficient to satisfy her burden in her prima facie case and create a reasonable doubt in the mind of a juror, and therefore the duress instruction should have been given. We begin by examining Defendant's testimony at trial.

**{7}** Defendant testified that she had a relationship with Victim several years before the instant events. Victim had become a good friend of her father's. Victim became aggressive when he drank and ultimately, according to Defendant's testimony, he raped her three years earlier. Approximately three years later, she again became friendly with Victim. During this three year hiatus in their relationship, Defendant's father and Victim remained good friends. On the night in question, Defendant and Victim had been out drinking, along with Defendant's father, and eventually ended up at Victim's house. Defendant stated that she was intoxicated, and Victim drove her car to his house.

**{8}** Once at Victim's house and without invitation, Victim stood over Defendant and tried to kiss her and touch her face. Defendant repeatedly told him to stop. Defendant did not slap or push Victim. Before Defendant attempted to flee from the house, the first time, Victim continued to physically touch Defendant and was "trying to pull [her] into him." Victim pulled a button off Defendant's clothing and ripped her shirt. When Defendant tried to leave Victim's house, Victim got angry and threw a pillow, knocking over a tower of CDs.

**{9}** At this time, Defendant realized that Victim still had her car keys. Victim would not allow Defendant to call her father, grabbed Defendant's phone from her, and when Defendant tried to leave, Victim physically blocked the door. Once Defendant was able to regain control of her keys and phone, Defendant made it out the door and into her car. Defendant testified, "Well, my thought was to drive away first and then to call [my father]." Defendant had started her vehicle *before* Victim jumped in.

3

**{10}** After Victim jumped into the vehicle, Defendant repeatedly ordered Victim out of the vehicle but he would not leave. As Defendant started to drive home, Victim was yelling and screaming at Defendant. At which point, Defendant again tried to call her father. When Victim grabbed the phone from Defendant, Victim also grabbed Defendant's hair, causing the car to jerk. As Victim grabbed Defendant's hair and the phone, Victim jumped out of the car and started to run around to the front of the car. It was then that the car jumped the curb and hit a fence. Defendant believed that Victim had jumped out of the car before Defendant's car hit the fence. During Defendant's testimony, she stated that she accidentally swerved into Victim, as Defendant did not know Victim was going to keep running forward. Defendant does not dispute that she struck Victim.

**{11}** Defendant argues that her testimony was sufficient to warrant the duress instruction, specifically UJI 14-5130 NMRA, for great bodily harm by vehicle and aggravated battery. The three elements contained in the instruction are:

(1)    the defendant committed the crime under threat,
(2)    the defendant feared immediate [great] bodily harm to [herself] or others if [she] failed to commit the crime, and
(3)    a reasonable person in the defendant's position would have acted in the same way under the circumstances.

*Rios*, 1999-NMCA-069, ¶ 7; *see* UJI 14-5130.

**{12}** Defendant argues that her testimony was also sufficient to warrant the duress instruction for the strict liability crime of aggravated DWI, providing:

(1)    the defendant acted under unlawful and imminent threat of death or serious bodily injury,
(2)    the defendant did not find [herself] in a position that compelled [her] to violate the law due to [her] own recklessness,
(3)    [the defendant] had no reasonable legal alternative, and
(4)    [the defendant's] illegal conduct was directly caused by the threat of harm.

*Rios*, 1999-NMCA-069, ¶ 25; *see State v. Baca*, 1992-NMSC-055, ¶ 19, 114 N.M. 668, 845 P.2d 762.

**{13}** The State argues that Defendant failed to present sufficient evidence on the "immediacy" requirement and the "reasonableness" requirement of both instructions. Therefore, the State asserts that Defendant was not entitled to the duress instruction.

**I.     Great Bodily Harm by Vehicle (DWI) and Aggravated Battery (Deadly Weapon-Vehicle)**

4

**{14}** In *Rudolfo*, a case involving self-defense as justification, our Supreme Court stated that the standard for fear of immediate great bodily harm is a subjective one (immediate danger and actual fear from the perspective of Defendant) and the standard for whether a reasonable person would have acted in the same way as Defendant is an objective one (hypothetical behavior of a reasonable person under the same circumstances). 2008-NMSC-036, ¶ 17; *see State v. Duncan*, 1990-NMCA-063, ¶ 24, 113 N.M. 637, 830 P.2d 554 (same). The subjective fear of immediate great bodily harm by a defendant depends on the circumstances of *each case*. *See Esquibel*, 1978-NMSC-024, ¶ 12. In *Esquibel*, the defendant escaped from prison some forty-eight to seventy-two hours after the most recent threat of harm. *Id.* Despite the passage of time, our Supreme Court held that a reasonable juror could conclude that the defendant subjectively feared immediate great bodily harm. *Id.* "Under the circumstances of [*Esquibel*], the passage of two to three days between threat and escape does *not* suffice to remove the defense of duress from the consideration of the jury." *Id.* (emphasis added).

**{15}** Here, Defendant testified that after returning to Victim's house, Victim tried to kiss her and touch her face. Despite being told to stop, Victim continued his physical touching, pulled a button off her clothing and ripped her shirt. Having managed to secure her car keys, Defendant testified that she was able to escape Victim's house and get to her car, whereupon Victim continued his pursuit and got into the front passenger seat, refusing to leave. Once in the car, in what could only be inferred by a reasonable juror from Defendant's testimony as a continuation of the assault, Victim continued to yell and scream at Defendant. Defendant testified that Victim grabbed her hair, causing the car to jerk. Victim jumped out of the car and started to run around to the front of the vehicle. Defendant admitted that she struck Victim.

**{16}** We conclude that Defendant made a prima facie showing of duress by presenting evidence to establish that: (1) Defendant was previously raped by Victim years earlier; (2) Defendant fled Victim's home in reasonable fear of immediate bodily harm—being raped by Victim again; (3) Victim's continued conduct when he immediately followed Defendant to her car and jumped into the vehicle, reasonably continued Defendant's fear of immediate bodily harm; and (4) Defendant's continued fear of immediate bodily harm remained even after Victim jumped out of Defendant's vehicle and began running around to the front because Victim was still in a position to re-engage in his assaultive behavior. We conclude that a jury could also find that an objectively reasonable person would have continued to try to get away from Victim's assaultive behavior and would have attempted to drive away from the scene to escape further assaults by Victim once he exited Defendant's car. Thus, Defendant established both the subjective "immediacy" prong and the objective "reasonableness" prong for a prima facie defense of duress and the district court should have instructed the jury accordingly. "If the evidence supports a theory of the case, a defendant is entitled to [an] instruction on that theory." *Castrillo*, 1991-NMSC-096, ¶ 4.

**{17}** Having concluded that Defendant was entitled to the duress instruction pursuant to UJI 14-5130, we hold that the State was improperly relieved of its burden of proof under the

5

duress instruction. "The burden is on the state to prove beyond a reasonable doubt that the defendant did not act under such reasonable fear." UJI 14-5130. A defendant is entitled to jury instructions on her theory of the case if there is evidence to support the instruction. As a result, the failure to give such a duress instruction—UJI 14-5130—for the charges of great bodily harm by vehicle and aggravated battery was reversible error.

## II.     Aggravated DWI

**{18}**     Defendant argues that she was entitled to a *Rios* duress instruction for the crime of aggravated DWI. "This Court has held that DWI is a strict liability offense." *Rios*, 1999-NMCA-069, ¶ 6. As noted above, our case law has altered the second and third elements of the duress defense relative to a strict liability crime. As a result, the second and third elements for a strict liability crime of DWI would be, "(2) [Defendant] did not find [herself] in a position that compelled [her] to violate the law due to [her] own recklessness, [and] (3) [Defendant] had no reasonable legal alternative[.]" *Id.* ¶ 25. Our Supreme Court in *Baca* teaches that use of the duress defense in a strict liability crime may be tempered with a narrow exception, by utilizing these two points in the instruction, "without vitiating the protectionary purpose of the strict liability statute." 1992-NMSC-055, ¶ 19. Without inclusion of these two elements in a strict liability duress instruction, we see no other reasonable manner in which to properly inform a jury of the evidentiary requirements placed upon a defendant. "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883. Because aggravated DWI is a strict liability crime, we conclude that the *Rios* instruction would be the proper jury instruction for Defendant's duress defense as opposed to the unmodified UJI 14-5130. We now turn to Defendant's argument that her prima facie case legally entitled her to the modified duress instruction for the strict liability crime of aggravated DWI.

**{19}**     After returning to Victim's house, Defendant testified that Victim stood over her and tried to kiss her, touched her face, pulled Defendant into him, pulled a button off her clothing, and ripped her shirt. When she attempted to leave Victim's house, Victim blocked the door. Victim prevented Defendant from calling her father. When Defendant secured her keys, she fled to her car. Upon entering her car, Victim then sprinted out to the car and forced his way into the right passenger seat, refused to leave, and continued to yell and scream at Defendant.

**{20}**     The State responds that Defendant failed to address the reasonable legal alternatives to her commission of the crime of aggravated DWI. According to the State, the evidence established numerous legal alternatives to driving, including whether Defendant could have: (1) called her father or the police; (2) asked Victim's roommate for assistance; (3) after Victim ceased blocking the door, left without her phone or car keys; (4) gone to a neighbor's house; or (5) after securing her phone and car keys, simply walked out the door, gotten into her vehicle, locked the doors, and then called for assistance. The State argues that, as a result of these failures to address the evidence presented regarding reasonable legal alternatives

6

available, Defendant made the unreasonable decision to drive her vehicle upon exiting Victim's home.

**{21}** On cross-examination Defendant testified, "Well, my thought was to drive away first and then to call [my father]." Defendant had started her vehicle before the Victim had jumped in. The State also points out that on cross-examination of Defendant relative to the issue of seeking assistance of Victim's roommate, Defendant testified that the roommate, "wasn't somebody I really knew. I mean, I don't know. I just wanted to get out of the house." Thus, the State points out that Defendant either failed to address the reasonable legal alternatives to driving that were available as part of her prima facie case or she failed to dispute or rebut the evidence presented by the State regarding the reasonable legal alternatives to driving that were available to her. We therefore address whether Defendant, "failed to show that [she] exhausted all legal alternatives to [her crime of aggravated DWI]," under the facts of this case. *Baca,* 1992-NMSC-055, ¶ 22.

**{22}** In *Castrillo,* the series of events that led to the unreasonable illegal act of a convicted felon purchasing a firearm occurred over a period of months. 1991-NMSC-096, ¶ 2. The defendant could have called the police and therefore the defendant was unreasonable in choosing an illegal alternative. *Id.* ¶ 18. In *Baca*, a prisoner in the penitentiary armed himself with a shank two days after being confronted by another prisoner, without having informed a guard or requesting appropriate security arrangements after the first confrontation. 1992-NMSC-055, ¶ 22. In both cases, our Supreme Court noted that "[t]he obvious response to threatened violence—especially a nebulous, potential, future violence—is not to resort to [criminal conduct]." *Id.* ¶ 21 (internal quotation marks and citation omitted).

**{23}** In *Rios*, this Court reviewed a DWI strict liability crime on facts more pertinent to those in this appeal. 1999-NMCA-069, ¶ 1. The defendant sought refuge in his truck, and as the attack continued, the defendant started the vehicle and began to drive out of the parking lot. *Id.* ¶ 2. In examining whether the defendant acted under an imminent threat of death or serious bodily injury and therefore had no reasonable legal alternative to DWI, this Court concluded that the defendant had not met his burden of establishing the objective element of reasonable legal alternative by "jumping behind the wheel of a vehicle and taking off." *Id.* ¶¶ 26-27 (internal quotation marks omitted).

**{24}** The defense of duress must be construed differently in the context of a strict liability crime. "Specifically, the elements of immediacy and reasonableness must be construed narrowly so that the high level of protection afforded by a statute [implicating] strict liability is not vitiated." *Baca*, 1992-NMSC-055, ¶ 16. It is against this jurisprudential framework that we analyze whether Defendant made a prima facie showing of duress in a strict liability case such as the one before this Court.

**{25}** Defendant maintains that the immediacy of Victim's threats and her attendant responses thereto were a reasonable legal alternative because Victim's assaultive behavior, both in Victim's home and continuing into Defendant's vehicle was imminent, not nebulous,

potential, or future in nature. We address the immediacy issue first. Defendant argues that once she exited Victim's home, and as soon as she got into the vehicle, Victim rushed out to the vehicle and got in, which she claimed left her no opportunity to lock the doors. We conclude that, viewing the evidence in the light most favorable to giving Defendant's requested duress instruction, there was sufficient evidence presented to support Defendant's position that she was in immediate fear of great bodily harm and this justified allowing the jury to assess the immediacy of Defendant's fear. Therefore, the subjective immediacy element of a duress instruction was satisfied by Defendant's evidence.

**{26}** We now turn to the evidence regarding whether Defendant had no reasonable legal alternative to driving away from Victim's home. We conclude that the prima facie evidence Defendant presented did not satisfy the objective third element of the *Rios* instruction—no reasonable legal alternative—for receiving a duress instruction to a strict liability crime. *Rios*, 1999-NMCA-069, ¶ 25. Numerous legal non-driving alternatives were presented by the State's evidence showing that Defendant was not required to drive away from Victim's home in an intoxicated state. However, Defendant testified that she had already made the decision that she intended to get out of Victim's home, drive away in her vehicle, and then call her father. Her testimony was, "Well, my thought was to drive away first and then to call [my father]." Defendant also started her car before Victim ran over and jumped inside. Based upon the evidence presented, the other legal alternatives were not even considered at the time of the incident or factually overcome after being raised by the State at trial. Thus, Defendant failed to objectively meet her initial burden for a duress instruction—establishing that no other reasonable legal alternatives existed to driving away from Victim's home intoxicated. *See Baca*, 1992-NMSC-055, ¶ 22 (recognizing the alternatives presented and affirming the district court's ruling that the defendant "failed to show that he exhausted all legal alternatives to his [strict liability criminal offense]"). As a result, the district court did not err in refusing to give the modified duress instruction for the strict liability charge of aggravated DWI.

## CONCLUSION

**{27}** We affirm Defendant's convictions for aggravated DWI and leaving the scene of an accident (great bodily harm). We reverse Defendant's convictions for great bodily harm by vehicle and aggravated battery, and we remand these charges to the district court for further proceedings and a new trial.

**{28}** **IT IS SO ORDERED**.

_____
**STEPHEN G. FRENCH, Judge**

**WE CONCUR:**

**TIMOTHY L. GARCIA, Judge**

**JONATHAN B. SUTIN, Judge (specially concurring).**

**SUTIN, Judge (specially concurring).**

**{29}**     While I concur in the majority opinion, I have concerns that the opinion may not fully handle some of the issues. I write separately in hopes that our Supreme Court will take certiorari and address what appear to me to be problems inherent in duress instruction cases. The case at hand is difficult conceptually, factually, and with regard to rule applicability. It offers food for thought and cries out for a bit of clarity.

**{30}**     In considering whether to give a duress instruction, the district court must determine whether, assuming the defendant is convicted of the crime charged, the defendant has established a prima facie case that the commission of the crime occurred out of duress—that is, that the defendant feared immediate great bodily harm if he did not commit the crime and that a reasonable person would have acted in the same way under the circumstances.  Of course, the defendant who goes to trial does not and will not admit having committed the crime.  It is and must be a hypothetically committed crime.

**{31}**     The only Uniform Jury Instruction on the duress defense, UJI 14-5130, reads in part:

> If the defendant feared immediate great bodily harm to himself or another person if he did not commit the crime and if a reasonable person would have acted in the same way under the circumstances, you must find the defendant not guilty.

The state of the law presents some concerns.

**{32}**     First, there exist two different tests for giving the duress defense depending upon whether the crime is or is not a strict liability crime.  Non-strict liability crimes require UJI 14-5130.   Strict liability crimes require a different, court-created instruction. Yet the committee commentary in UJI 14-5130 plainly states that this instruction "applies to all crimes, other than homicide[.]" *See Rios*, 1999-NMCA-069, ¶ 25 (describing the four elements of a strict liability crime). A clear inconsistency.

**{33}**     Second, one test, if not the primary test, to be applied in deciding whether to give UJI 14-5130 "is whether any juror could be justified in having a reasonable doubt about whether the accused acted [under duress]."  *Guerra*, 2012-NMSC-014, ¶ 14. That test nowhere appears in UJI 14-5130, and in the case before us, were the test to be applied, given the facts one has to speculate as to what the result would be not only with respect to each crime, but also as between the aggravated DWI (strict liability) and the two other crimes (not strict liability), given that the criminal activity appears to have stemmed from Defendant's fear

and attempts to escape harm. There is no easy distinction to be made.

**{34}** Third, a general principle involving instructing the jury is that the district court is to consider the evidence in a light most favorable to giving the instruction. Yet, combined with the juror-reasonable-doubt test, one, again, would have to similarly speculate as to what the results would be. Again, no easy rule application can be made.

**{35}** Fourth, a question exists as to the usefulness of attempting distinctions between a "subjective" test involving fear and an "objective" test involving the reasonable person and reasonable juror. Are these tests properly applied by a district court? Does the subjective reasonableness test include whether, under the circumstances, no "reasonable alternative" existed? Is it a test more properly applied by a jury after the instruction is given? If the latter, how is the jury to be instructed on subjective and objective? How is the court or jury to make an informed, rational decision as to the emotional (fear) and the rational (alternative) under circumstances in which the criminal activity, be it a strict liability crime or not, stems from a defendant's legitimate fear and attempts to escape?

**{36}** Fifth, in regard to the defense as to Defendant's driving into Victim in the case before us, it must be assumed, because of Defendant's convictions, that she drove into Victim intending to harm him. The oddity that hits one in the face is that the duress instruction issue here is meaningless without a conviction. If Defendant intended to harm Victim and intentionally drove into him, what fact possibly exists to support a prima facie showing of a right to the duress instruction—given that there can be no question that Defendant had the alternative of driving away instead of intentionally driving into Victim. This type of analytic insight into the facts of the case together with the majority opinion's analysis indicate the complexity, conceptual difficulty, and rule application problems that attend duress instruction cases.

**{37}** Until the foregoing concerns about the analyses and tests to be applied in duress cases are addressed and the job of the district and appellate courts made less of a crapshoot, I have chosen to specially concur with the hope that our Supreme Court takes on the issue. Although the record in this case might have been better developed and the briefs better written, this case seems to me to be a good case in which to do so.

_____
**JONATHAN B. SUTIN, Judge**

10