14 P.3d 1282

2000-NMSC-038

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Paul Richard LASNER, Defendant–
Appellant.**

No. 25,391.

Supreme Court of New Mexico.

Dec. 7, 2000.

Phyllis H. Subin, Chief Public Defender, Nancy M. Hewitt, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

Patricia A. Madrid, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, NM, for Appellee.

## OPINION

MAES, Justice.

{1} This is an appeal under Article VI, § 2 of the New Mexico Constitution of the convictions of Paul Lasner for one count of first degree murder of Johnny Joe Lucero, contrary to NMSA 1978, § 30–2–1(A) (1994), one count of aggravated battery on German Ibarra, and one count of aggravated battery on Noe Torres, contrary to NMSA 1978, § 30–3–5(C) (1969). The Defendant sets forth

three grounds on which he asks this Court to reverse his convictions. First, he argues the trial court erred in not suppressing statements the Defendant made to police following his apprehension shortly after the shooting of the victims. Second, he argues his constitutional right to confront witnesses against him was violated when the trial court limited his cross-examination of Ibarra and Torres concerning their criminal records. Third, he argues the trial court erred in denying his motion for change of venue. We affirm the Defendant's convictions.

*PRELIMINARY FACTS*

{2} A shooting occurred in the early morning hours of August 6, 1997 on Chama Street in Clovis, New Mexico. Injured in the shooting were Johnny Joe Lucero, German Ibarra, and Noe Torres. Lucero died later of the wounds he received. On the evening of August 5, Augustine Gonzales went to a house on Chama Street looking for his cousin. There, he testified, he was badly beaten by several individuals with boards. In response, Gonzales left to get his friend, the Defendant, and they returned with two others to the house on Chama Street sometime around midnight. Gonzales was driving and the Defendant was in the back seat of the vehicle behind the driver's seat. When they arrived at the house, Gonzales honked the car horn and four or five individuals ran out from the backyard. Gonzales heard a gunshot coming from the back of his car and saw sparks. He believed the Defendant had fired a shotgun. Lucero, Ibarra, and Torres were struck by the blast.

{3} The Defendant became a suspect in the shooting. At approximately 3:00 a.m., the Defendant was located at his girlfriend's house, and was transported to the police station where he was taken to the office of Detective Sergeant Doug Miller. The Defendant was handcuffed. Miller, who was alone with Defendant throughout the interview, testified that the Defendant was awake and alert and that he read the Defendant his rights from a form. Miller stated that he uses more than one type of form—he has one for adults, one for juveniles (the Defendant

was 17 years old), and one in Spanish. He tries to use the correct form, but he did not use a juvenile form for the Defendant, nor was the ·Defendant informed of his right to have his mother present during questioning. Miller said his usual procedure is to read the rights line by line, and ask the suspect whether he understands each line. The Defendant stated he had completed eleventh grade and was specifically asked whether he agreed to give up his rights and talk to the Detective. Detective Miller testified that the Defendant indicated that he understood his rights and was willing to cooperate. Miller then had the Defendant sign a waiver of his rights.

{4} The Detective then turned on a tape recorder and began to read the Defendant his rights again. The Defendant's responses are clear until he was asked whether he was willing to make a statement, at which time the Defendant seems to mumble. The tape is then turned off, because, Miller testified, there was a knock on the door and another detective came in to ask him a question. When the taping was resumed, the Defendant admitted to the shooting. At no time during the interrogation of the Defendant was his mother or attorney present. Later it was shown that the Defendant had been involved in juvenile criminal matters previously.

{5} Before trial, the State filed motions in limine to prevent the Defendant from cross-examining witnesses Ibarra and Torres as to certain of their past crimes. The Defendant filed a motion to suppress his statements to the police and a motion for change of venue, both of which were denied.

*SUPPRESSION OF STATEMENTS TO POLICE*

{6} The Defendant claims that he was not accorded his Fifth Amendment right against self-incrimination in giving his confession to police. Specifically, under *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the police must advise one under custodial interrogation "that he has a right to remain silent, that any

statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Before proceeding to question the individual, the police must obtain a knowing, intelligent, and voluntary waiver of these rights. *Id.* When a Defendant attempts to suppress a statement given to the police, the State bears the burden of demonstrating by a preponderance of the evidence that the Defendant knowingly, intelligently, and voluntarily waived his rights against self-incrimination. *State v. Martinez,* 1999–NMSC–018, ¶ 14, 127 N.M. 207, 979 P.2d 718. The reviewing court must evaluate the totality of the circumstances, including the mental and physical condition, background, experience and conduct of the accused, as well as the conduct of the police, in determining whether the State has successfully carried its burden. *Id.* (quoting *State v. Salazar,* 1997–NMSC–044, ¶ 62, 123 N.M. 778, 945 P.2d 996). The test for reviewing a juvenile's waiver of rights is identical to that of an adult's and is based on the totality of the circumstances. *Fare v. Michael C.,* 442 U.S. 707, 724–25, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979).[1] In *Martinez* we noted that the legal question of whether or not a "valid waiver of Fifth Amendment rights" has occurred is reviewed de novo. *Martinez,* 1999–NMSC–018, ¶ 15, 127 N.M. 207, 979 P.2d 718,.

{7} The Defendant first argues generally that the rights guaranteed under the Children's Code, NMSA 1978, § 32A–2–14(E) (1993), must apply because at the time he made his statements to Detective Miller, he was a juvenile and had not yet been charged with any crime which would qualify him as a serious youthful offender because Lucero had not yet died. *See* NMSA 1978, § 32A–2–3(H) (1996) (" '[S]erious youthful offender' means an individual fifteen to eighteen years of age who is charged with and

indicted or bound over for trial for first degree murder.") In *Martinez* we applied the provisions of Section 32A–2–14(E) to an interrogation conducted before Martinez had been charged or indicted for first degree murder. *Martinez,* 1999–NMSC–018, ¶ 17, 127 N.M. 207, 979 P.2d 718. Thus, we examine the Defendant's waiver of his constitutional rights under Section 32A–2–14(E). *Id.* In both *State v. Niewiadowski,* 120 N.M. 361, 365, 901 P.2d 779, 783 (Ct.App.1995) and *State v. Setser,* 1997–NMSC–004, ¶ 13, 122 N.M. 794, 932 P.2d 484, the defendants were sixteen years old at the time of their interviews, but were subsequently tried for murder as adults. The Court of Appeals and this Court, respectively, in *Niewiadowski,* 120 N.M. at 366, 901 P.2d at 784, and *Setser,* 1997–NMSC–004, ¶ 13, 122 N.M. 794, 932 P.2d 484, utilized the Children's Code, Section 32A–2–14(E), to determine whether their statements were voluntary and therefore admissible. That section provides:

> In determining whether the child knowingly, intelligently and voluntarily waived the child's rights, the court shall consider the following factors:
>
> (1) the age and education of the respondent;
>
> (2) whether or not the respondent is in custody;
>
> (3) the manner in which the respondent was advised of his rights;
>
> (4) the length of questioning and circumstances under which the respondent was questioned;
>
> (5) the condition of the quarters where the respondent was being kept at the time he was questioned;
>
> (6) the time of day and the treatment of the respondent at the time that he was questioned;
>
> (7) the mental and physical condition of the respondent at the time that he was questioned; and

---

1. The Defendant does not specifically claim that the New Mexico Constitution should be interpreted more liberally than the federal constitution and applied to this case, *see* N.M. Const. art. II, § 15; we therefore discuss his self-incrimination claims as arising under the federal constitution.

*See State v. Gomez,* 1997–NMSC–006, ¶¶ 22 23, 122 N.M. 777, 932 P.2d 1 (discussing preservation requirements for a claim based on state constitutional law); *see also State v. Woodruff,* 1997–NMSC–061, ¶ 11, 124 N.M. 388, 951 P.2d 605 (same).

(8) whether or not the respondent had the counsel of an attorney, friends or relatives at the time of being questioned.

In *Martinez* we summarized this list as a codification of the totality-of-the-circumstances test. *Martinez*, 1999–NMSC–018, ¶ 18, 127 N.M. 207, 979 P.2d 718. We examine the totality of the circumstances to determine whether the Defendant knowingly, intelligently, and voluntarily waived his constitutional rights "giving particular emphasis to the factors listed" in the statute. *Id.*

▪ {8} On this basis, we analyze the Defendant's specific complaints about the circumstances of his giving his waiver. He emphasizes that he was a minor, that a special form used to advise juveniles of their rights was not used in his case, that he was not informed that he may have had the right to have a parent present during questioning, that the interrogation took place at approximately 3:00 a.m. in a police station while he was in handcuffs, and that the tape recorder was turned off at a point during the interrogation when he might have vacillated in understanding or waiving his rights.

{9} The Defendant, who was associated with gangs, had numerous previous contacts with law enforcement. In view of his previous experience with the court system and the fact that he had been questioned by police officers and represented by attorneys in the past, a minor such as the Defendant was capable of a knowing, intelligent, and voluntary waiver. *Id.* ¶ 24. In any event, regardless of his previous experience with law enforcement, "[a]t the time of questioning, [the defendant] was seventeen and a half years of age and was, thus, old enough to comprehend *Miranda* warnings and the consequences of waiving his rights." *Id.* ¶ 22 (citing *State v. Jonathan M.*, 109 N.M. 789, 791, 791 P.2d 64, 66 (1990)); *Cf. Setser*, 1997–NMSC–004, ¶ 14, 122 N.M. 794, 932 P.2d 484 (holding that although the defendant had some cognitive disabilities, there was no evidence that she lacked sufficient intelligence to understand

her rights and the repercussions of waiving those rights).

{10} It is also well-established that "the question whether the accused waived his rights 'is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case.'" *Fare*, 442 U.S. at 724, 99 S.Ct. 2560 (quoting *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979) (emphasis added)).[2] There is a complete lack of evidence to the effect that the Defendant needed to be provided with a special form in order to understand his rights or knowingly waive them. The evidence rather suggests convincingly that the Defendant was told of each of his rights and that he understood them, and further, that his waiver was knowing, intelligent, and voluntary.

{11} The only potential defect in the procedure used in the Defendant's case is that a parent was not present at his interrogation. It appears that during this time, his mother knew he was in trouble with the police and was attempting to contact an attorney. In any event, as was emphasized in *Martinez*, 1999–NMSC–018, ¶ 20, 127 N.M. 207, 979 P.2d 718, the "Legislature has not established a requirement that parents be notified about a custodial interrogation of their juvenile child." In view of the Defendant's age and eleventh-grade education, his alert condition at the time of the interrogation, and the manner in which his rights were explained to him, we conclude that he was more likely than not to understand and knowingly waive them, even without his parent present. *See Id.* ¶ 23 (citing *Conner v. State*, 334 Ark. 457, 982 S.W.2d 655, 660 (1998)).

{12} The Defendant recites the fact that the interrogation took place at 3:00 a.m. as a fact mitigating the validity of the waiver, but there is no allegation of anything connected with the lateness of the hour which would give it meaning as a fact detracting from voluntariness. In *State v. Hallman*, 391

---

**2.** *But see People v. Rivera*, 41 Cal.3d 388, 221 Cal.Rptr. 562, 710 P.2d 362, 366 (1985) (discussing California's divergence from *Fare* on state constitutional grounds).

N.W.2d 191, 196 (S.D.1986), the South Dakota Supreme Court was troubled by the extensive questioning of a defendant from 10:30 p.m. until 3:00 a.m., but relied on substantial evidence that the defendant "displayed few signs of weariness, never complained or expressed discomfort, and never indicated a wish or desire to terminate the interrogation." Additionally, *State v. Evans*, 701 S.W.2d 569, 575–76 (Mo.Ct.App.1985), involved a 3:00 a.m. arrest and a confession given after the defendant had been given his rights. The court said, "[w]e find no coercion or impaired mental state existing at the time the defendant made the inculpatory statements." *Id.* at 576. Also, in *Russell v. State*, 739 So.2d 58, 67 (Ala.Crim.App.1999), as here, "[t]here was no evidence whatsoever regarding the [effects] of the late hour on [defendant's] free will to give a statement. There was no evidence suggesting that [defendant] was fatigued, that his will was overborne, or that he was sleepy at the time of the interrogation." The Defendant here was awake and alert at the time he was questioned, and does not set out any factors applying to him which might be associated with the mere lateness of the hour so as to contribute to the asserted involuntariness of his statement. *State v. Davis*, 98 Or.App. 752, 780 P.2d 807, 808 (1989) ("[A]lthough the hour of the interrogation was late [2:00 a.m.], it was not coercive in the sense that, combined with the other circumstances, it resulted in defendant's will being overborne.").

{13} The Defendant also points to the taping of his statement made by Detective Miller where, at the time he is asked whether he would be willing to make a statement, he utters something unintelligible but according to the testimony of the detective, nods his head up and down. We note that, in general, statements made to the police while in custody need not be tape-recorded in order to be admissible. *See United States v. Short*, 947 F.2d 1445, 1451 (10th Cir.1991); *State v. Rhoades*, 120 Idaho 795, 820 P.2d 665, 674–75 (1991). Once again in this instance, there is no evidence that affirmatively establishes any fact in favor of the Defendant's proposition

that he demonstrated the lack of a desire to speak. There is merely the suggestion that for some reason, the Defendant's confession might have been involuntary. The Defendant has confronted the totality of the circumstances test with various facts surrounding the giving of his statement, and claims that these, considered together, carry through to conclusiveness the presumption against waiver. *See State v. Boeglin*, 100 N.M. 127, 132, 666 P.2d 1274, 1279 (Ct.App. 1983) ("On appeal, there is a presumption against waiver of a constitutional right."). The facts marshaled by the Defendant, however, when examined in the light of the controlling law, do not vindicate his claim.

{14} In conclusion, we have considered the specific factual points raised by the Defendant using a totality of the circumstances analysis and bearing in mind the factors in Section § 32A–2–14(E). We find that although the interrogation took place at a police station while the Defendant was in handcuffs, the effect on voluntariness of other factors suggested by the Defendant was superficial. The motion to suppress the Defendant's statement was therefore properly denied.

## EXCLUSION OF EVIDENCE CONCERNING IBARRA AND TORRES

{15} The defense theory of this case is that it involved, in part, the conflicting accounts of the witnesses Ibarra, Torres and Gonzales concerning what occurred on Chama Street earlier on the evening of August 5, 1997 and at the time of the shooting. The defense considered impeachment of these witnesses to be crucial. On cross-examination, Defendant attempted to impeach them on specific instances of conduct from their juvenile records. Although a prior shoplifting charge of Gonzales was put in evidence, the Defendant's right to cross-examine the other two witnesses, Ibarra and Torres, was restricted by the trial court. The Defendant alleges the restrictions rose to the level of denial of his constitutional rights. The Defendant alleges a violation of his constitutional right to confront witnesses against him under the Sixth and the Fourteenth Amend-

ments to the federal constitution. *See State v. Sanders*, 117 N.M. 452, 459, 872 P.2d 870, 877 (1994) (discussing a defendant's constitutional right to cross-examine); *see also State v. Lopez*, 1996–NMCA–101, ¶ 14, 122 N.M. 459, 926 P.2d 784 (examining state and federal constitutional right to cross-examine). Defendant failed to preserve his state constitutional claim. The State argues that these restrictions were proper under the rules of evidence and the federal constitution.

{16} The State contends that these exclusions of evidence should be reviewed for abuse of discretion. The Defendant questions the correct standard of review, alleging that a constitutional error occurred and therefore de novo review is indicated. Alternatively, the Defendant contends the restrictions on cross-examination were an abuse of discretion. We initially review whether or not the trial court has abused its discretion in its evidentiary rulings. *See State v. Worley*, 100 N.M. 720, 723, 676 P.2d 247, 250 (1984) (holding that admission or exclusion of evidence is within discretion of trial court and that such determination will not be disturbed on appeal in the absence of clear abuse of discretion); *see also State v. Brown*, 1998–NMSC–037, ¶ 25, 126 N.M. 338, 969 P.2d 313 (noting abuse of discretion is standard of review for limitations on cross-examination). A trial court abuses its discretion when a ruling is "clearly against the logic and effect of the facts and circumstances of the case." *State v. Simonson*, 100 N.M. 297, 301, 669 P.2d 1092, 1096 (1983).

{17} Ibarra and Torres testified that only one shot was fired from the car which pulled up to the house where the beating had occurred earlier. They testified that no gun had been fired from the house and that no one else at the scene was armed. There was also evidence from Gonzales and two neighbors that only one shot was fired.

{18} In response to the State's Motion in Limine to prohibit the defense from inquiring into the juvenile records of Ibarra, Torres and Gonzales, the defense argued that the witnesses' records should be allowed in evidence as bad acts under Rule 11–608(B)(1) NMRA 2000 or alternatively as convictions under Rule 11–609(D) NMRA 2000, concerning prior adjudications. The State argued and the trial court found Rule 11–609(D), concerning admission of juvenile adjudications, to be the applicable rule. We agree. Rule 11–609(D) provides:

> Evidence of juvenile adjudications is generally not admissible under this rule. The court may, however, in a criminal case allow evidence of a juvenile adjudication of a witness other than the accused if conviction of the offense would be admissible to attack the credibility of an adult and the court is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence.

The rule sets out hurdles the defense would have had to overcome before admission of the evidence in question would have been proper. First, the evidence would have to be necessary for a fair determination of guilt or innocence. Second, the evidence would have to be admissible to attack the credibility of an adult, under subsection (A) of Rule 609. That subsection provides:

> For the purpose of attacking the credibility of a witness:
>
> (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 11–403, if the crime was punishable by death or imprisonment in excess of one (1) year under the law under which the witness was convicted. . . .
>
> (2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

{19} Ibarra was twenty years old at the time of trial. Ibarra had previous juvenile adjudications for criminal damage, no insurance, no driver's license, defective equipment, resisting arrest, minor in possession of alcohol, battery on a police officer, concealing identity, resisting or eluding a police officer, and escape from custody. It is undisputed

that all the crimes in question are misdemeanors, except battery on a peace officer. Thus, the misdemeanors cannot be admitted under Rule 609(A)(1).

{20} Under subsections (D) and (A)(2) of Rule 609, read together, evidence of a witness' convictions must be analyzed for its dishonesty or false statements. That is, it must be determined whether any of the crimes could be used to attack the credibility of an adult under subsection (A)(2). The New Mexico approach to what constitutes "dishonesty or false statement" follows the federal approach. *State v. Bobbin,* 103 N.M. 375, 381, 707 P.2d 1185, 1191 (Ct.App.1985) (allowing impeachment with crimes of dishonesty or false statement or crimes committed through fraud or deceit); *see generally,* Christopher B. Mueller and Laird C. Kirkpatrick, 3 *Federal Evidence* § 277, at 258–69 (2d ed.1994).

{21} Of Ibarra's three crimes brought in issue by the Defendant, only the crime of concealing his identity involves dishonesty or false statement. The trial court here had two opportunities to exclude the evidence—under Rule 11–403 NMRA 2000 as applied to Rule 11–609 subsection (A)(2)and Subsection (D). *See Lenz v. Chalamidas,* 109 N.M. 113, 117, 782 P.2d 85, 89 (1989). Exclusion of the evidence was not an abuse of discretion.

{22} The Defendant also seeks review of the trial court's rulings on the admissibility of the prior adjudications of witness Torres. When Torres testified at trial, the Defendant asked to be allowed to cross examine him about juvenile offenses, including a 1995 probation violation for possession of a deadly weapon, as well as prior shoplifting and larceny charges. The court allowed Torres to be examined about the shoplifting offense and the larceny, but refused to allow questions about his possession of a firearm in 1995. During a bench conference, defense counsel asked to be allowed to introduce evidence of Torres' juvenile crime of violation of probation due to possession of a firearm, and another crime not here in issue, in order to prove the Defendant's theory of self-defense.

{23} The Defendant now argues that the evidence of probation violation was admissible under Rule 404(B) NMRA 2000, which provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

This is a rule of inclusion allowing the use of other bad acts for other reasons. *See State v. Williams,* 117 N.M. 551, 557, 874 P.2d 12, 18 (1994). The Defendant argued that possession of a gun by Torres on another date was relevant to the Defendant's claim of self-defense. The trial court ruled that even if the evidence were relevant, Torres' probation revocation for possession of a gun was not admissible under Rule 11–403 because its potential prejudice outweighed its probative value. We conclude that this was a proper exercise of the trial court's discretion.

{24} Next we discuss the Defendant's claim under the federal constitution. The Defendant argues that the trial court's refusal to allow him to cross-examine these complaining witnesses concerning certain of their prior juvenile adjudications effectively denied him due process of law and the right to confront witnesses against him. *See* U.S. Const. amends. VI, XIV; *see also Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (stating that an accused has the right to confront witnesses against him and to cross-examine those witnesses regarding possible bias). We review this claim under a de novo standard. *State v. Martinez,* 1996–NMCA–109, ¶ 14, 122 N.M. 476, 927 P.2d 31 ("While the scope of cross-examination usually lies within the sound discretion of the district court, Confrontation Clause claims are issues of law that we review de novo.") "A defendant's right of confrontation—with its protection of the right to cross-examine, test credibility, detect bias, and otherwise challenge an opposing version of facts—is a critical limitation

on the trial court's discretion to exclude evidence a defendant wishes to admit." *State v. Johnson,* 1997–NMSC–036, ¶ 23, 123 N.M. 640, 944 P.2d 869 (balancing a defendant's constitutional rights to a full and fair defense with the State's interest to determine whether exclusion of evidence under rape shield law is constitutional). We acknowledge "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (internal quotations omitted). The Defendant sought to inquire into the witnesses' past adjudications, concerning acts not bearing on honesty. These adjudications were tangential and had little bearing on the truthfulness of the witnesses, but the potential prejudice to the state was great. *See State v. Meadors,* 121 N.M. 38, 48, 908 P.2d 731, 741 (holding that a portion of defendant's cross-examination was properly excluded because its potential for unfair prejudice was greater than its slight or non-existent probative value). We conclude that the trial court's limitations on the Defendant's cross-examinations were proper and not a violation of the Defendant's constitutional rights.

## CHANGE OF VENUE

{25} Defense counsel filed a motion for change of venue asserting that the Defendant was not able to obtain a fair trial in either Curry, Roosevelt, or De Baca Counties due to pre-trial publicity through television, radio, and newspapers. The Defendant presented eleven newspaper articles for the record. Also, the District Attorney had made a comment to the media. The State opposed the motion arguing that there had been no showing of prejudice. During jury selection, fifty-eight prospective jurors were called. Thirty-six members of the venire were subjected to individual voir dire in chambers. At least thirteen of the prospective jurors had heard details of the case. The trial court allowed defense counsel to challenge for cause all of the individuals he wanted to excuse because of their exposure to the case.

Defense motions for change of venue, made both before and after the jury was selected, were denied.

{26} The standard of review on a ruling regarding a motion for change of venue is whether or not the trial court abused its discretion. *See State v. House,* 1999–NMSC–014, ¶ 31, 127 N.M. 151, 978 P.2d 967 ("Under our venue statutes, those changes of venue that are not mandatory take place at the discretion of the trial court."); *see also State v. Hargrove,* 108 N.M. 233, 239, 771 P.2d 166, 172 (1989) (holding a trial court's refusal to grant a change of venue will be reviewed for abuse of discretion). The Defendant's argument for change of venue is based on the requirement of the New Mexico constitution that an accused be tried before "an impartial jury of the county or district in which the offense is alleged to have been committed." N.M. Const. art. II, § 14. NMSA 1978, § 30–1–14 (1963) provides "trials of crime shall be had in the county in which they were committed" and where death results, in the county in which the death occurred. The Defendant argues that public excitement or local prejudice prevented him from obtaining an impartial jury. In support of this argument the Defendant cites *State v. Alaniz,* 55 N.M. 312, 318, 232 P.2d 982, 986 (1951), which held "it is sufficient to show a reasonable apprehension that the defendant will not secure a fair and impartial trial." The Defendant also argues that "it is not necessary that the party moving for change of venue conclusively prove that it is impossible to have a fair trial." Defendant contends he may merely "demonstrate a reasonable apprehension that he will not obtain a fair trial." In *House,* 1999–NMSC–014, ¶ 43, 127 N.M. 151, 978 P.2d 967, we concluded that if the motion for change of venue is opposed the moving party has the burden of establishing through *"clear and convincing evidence* that a fair trial in that district is a practical impossibility." (Emphasis in original.) "Potential jurors' exposure to pre-trial publicity, by itself, does not require a change of venue and does not raise a presumption of prejudice." *State v. Hernandez,* 115 N.M. 6,

21, 846 P.2d 312, 327 (1993); *see also House,* 1999–NMSC–014, ¶ 43, 127 N.M. 151, 978 P.2d 967.

{27} *State v. Hernandez,* 115 N.M. 6, 21, 846 P.2d 312, 327 (1993) is closely on point. The *Hernandez* Court found that the defendant "did not introduce evidence that he was deprived of a fair and impartial jury." *Id.* Hernandez, like the Defendant here, "was able to question" those jurors who had heard about the case and "was able to challenge those who indicated partiality." *Id.* at 22, 846 P.2d at 328. The Defendant did not prove the "practical impossibility" of a fair trial by clear and convincing evidence. *House,* 1999–NMSC–014, ¶ 43, 127 N.M. 151, 978 P.2d 967. We will affirm a determination of venue if the trial court, in exercising its discretion, was "guided by law, caution, and prudence." *Alaniz* at 318, 232 P.2d at 985. The trial court, which has wide latitude in such decisions, did not abuse its discretion in denying the Defendant's motions for change of venue. *House,* 1999–NMSC–014, ¶ 111, 127 N.M. 151, 978 P.2d 967.

*CONCLUSION*

{28} We conclude that the trial court committed no error on the points raised by the Defendant on appeal. Looking at the totality of the circumstances, it was proper for the trial court to deny the Defendant's motion to suppress his statements to police. There was no abuse of discretion in the trial court's decision to exclude the evidence of the past crimes of Ibarra or Torres, nor in its decision to deny the Defendant's motion for change of venue. The judgment of the trial court is therefore affirmed.

{29} **IT IS SO ORDERED.**

MINZNER, C.J., BACA, FRANCHINI, and SERNA, JJ., concur.