**Certiorari Denied, October 13, 2015, No. 35,513**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2015-NMCA-110**

**Filing Date: August 13, 2015**

**Docket No. 33,297**

**STATE OF NEW MEXICO,**

        **Plaintiff-Appellee,**

**v.**

**WYATT B.,**

        **Child-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Sandra A. Price, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Child-Appellant

## OPINION

**WECHSLER, Judge.**

**{1}** Child, Wyatt B., appeals his adjudication for driving while under the influence of intoxicating liquor or drugs (DWI), contrary to NMSA 1978, Section 66-8-102(A), (B) (2010). DWI is a delinquent act under NMSA 1978, Section 32A-2-3(A)(1)(a) (2009). Child primarily raises violations of the Children's Code, NMSA 1978, §§ 32A-1-1 to -21 (1993,

1

as amended through 2009), and issues of evidentiary error in connection with the district court's admission of incriminating statements Child made to police officers while subject to an investigatory detention and arrest for DWI. Under the Children's Code, police cannot question or interrogate a child suspected of having committed a delinquent act without first advising the child of his or her right to remain silent and securing the child's knowing, intelligent, and voluntary waiver of that right. Section 32A-2-14(C); *State v. Javier M.*, 2001-NMSC-030, ¶ 48, 131 N.M. 1, 33 P.3d 1. If a child's statements are elicited in violation of this requirement, Section 32A-2-14(D) prohibits the admission of the child's statements at a subsequent court proceeding.

{2}     Child first argues that the district court erred in admitting his statements because the State failed to prove that Child knowingly, intelligently, and voluntarily waived his statutory right to remain silent, in violation of Section 32A-2-14(D). Child further argues that the State intentionally elicited inadmissible testimony regarding incriminating statements Child made before he was advised of his statutory right. Child contends that the inadmissible testimony similarly violated Section 32A-2-14(D), unfairly prejudiced Child, and could not be remedied by the district court's subsequent curative instruction to disregard Child's statements. Finally, Child argues that the district court erred in refusing to provide the jury with his requested instruction on duress.

{3}     We hold that Child's waiver of his statutory right to remain silent was made knowingly, intelligently, and voluntarily. We also hold that the testimony pertaining to the statements Child made before he was advised of his statutory right to remain silent was inadmissible, but that the improper admission of this evidence was harmless error. We further uphold the district court's denial of Child's request for a jury instruction on duress. Accordingly, we affirm Child's conviction.

**BACKGROUND**

{4}     Late in the evening of September 23, 2012, San Juan County Sheriff's Deputies Michael Carey and Ricky Stevens responded to a dispatch report of a suspicious vehicle parked outside a convenience store located near the western border of San Juan County, New Mexico. After arriving at the store and identifying the vehicle, Deputy Carey made contact with Child, who was in the driver's seat. Deputy Stevens approached the opposite side of the vehicle and made contact with Hensley George, who was in the passenger's seat. Deputy Carey observed signs of Child's intoxication and initiated a DWI investigation, which was video-recorded by the dashboard camera in Deputy Carey's patrol car. Before advising Child of his right to remain silent, Deputy Carey asked Child a series of questions pertaining to Child's age and identity and whether Child had been drinking. Child, who was sixteen years old at that time, made incriminating statements in response to Deputy Carey's questions. Deputy Carey then turned over the DWI investigation to Deputy Stevens, who administered field sobriety tests and ultimately arrested Child for DWI. Child made additional incriminating statements to Deputy Stevens and was later found to have a breath alcohol concentration of 0.14 percent and 0.15 percent.

**{5}** Child was tried pursuant to a criminal complaint charging him with DWI and possession of drug paraphernalia. Because the jury acquitted him of possession of drug paraphernalia, only the DWI conviction is at issue in this appeal. With regard to that charge, the State's evidence at trial consisted of the testimony of Deputies Carey and Stevens, the video recording that captured Deputy Carey's investigatory detention of Child, and the results of the breath alcohol tests.

**{6}** On the morning of Child's trial, after selection of the jury but before opening statements, Child made an oral motion to exclude his statements to police officers. Child's counsel specifically cited Section 32A-2-14(D), which provides that before the State may introduce at trial any statements made by a child who is alleged to be delinquent, "the state shall prove that the statement or confession offered in evidence was elicited only after a knowing, intelligent, and voluntary waiver of the child's constitutional rights was obtained." Child's counsel further argued that Child had not received any notice from the State that it intended to use Child's statements or offer them as evidence at Child's trial. The State argued that, as part of the discovery process, it had provided Child's counsel with a copy of Deputy Carey's dashboard camera video and had viewed the video together with Child's counsel. The district court addressed Child's motion as a suppression motion, and the court expressed its concern that attempts to suppress statements are the types of issues that are usually raised "well in advance" of trial and that Child's motion "should never have been made during trial." The district court nonetheless decided to proceed in addressing Child's motion by questioning Deputy Carey outside the presence of the jury on matters pertaining to the factors the district court must consider to determine whether Child's waiver was valid.

**{7}** In response to the district court's questions, Deputy Carey testified that he advised Child of his rights under *Miranda v. Arizona*, 384 U.S. 436, 467-68 (1966), (*Miranda*) after he discovered Child was a juvenile. He also testified that Child seemed to understand his questions and was not reluctant to answer them. However, in response to Child's counsel's questions, Deputy Carey testified that he could not remember what preliminary investigative questions he asked Child before advising Child of his *Miranda* rights. He further testified that it was possible that prior to his advisement to Child, he had asked Child whether he had been drinking. Following Deputy Carey's testimony, the district court denied a request by Child's counsel to call Deputy Stevens to the witness stand. Instead, the district court announced its ruling that, based on the testimony of Deputy Carey and after consideration of the factors outlined in Section 32A-2-14(E), Child's waiver was knowing, intelligent, and voluntary.

**{8}** After a brief recess, Child renewed his motion to exclude his statements, arguing that the district court should excise from Deputy Carey's dashboard camera video any statements made by Child that were elicited prior to Deputy Carey's advisement. Child's counsel again cited Section 32A-2-14(D) as support for his motion. Noting first that it had not seen Deputy Carey's video and that Child had not filed a motion to exclude or excise it, the district court asked Child's counsel if he had reviewed the video to determine the portions that he believed should be excised. Child's counsel responded that defense counsel "has had difficulty getting

the video to operate properly." The court again voiced its concern over the timing of Child's request, remarking that "the attorneys should have done this prior to sitting in trial with a jury in the hallway." The court then inquired whether the prosecutor knew the content of the video recording regarding statements Child made before Child was advised of his *Miranda* rights. The prosecutor informed the court that the questions were "introductory questions" that any police officer would make during a DWI investigation, including "what are you doing" and "have you been drinking." Child's counsel argued that if police asked Child if he had been drinking, that type of question would lead to an incriminating response under the Children's Code. The court noted that it may have to strike Child's statements if their introduction at trial was improper but decided to proceed with Child's trial without watching the video. The State informed the court that it planned to play only approximately seven minutes of the video.

**{9}** Prior to playing Deputy Carey's video for the jury, the State asked Deputy Carey on direct examination whether he had asked Child any questions prior to turning the DWI investigation over to Deputy Stevens. Deputy Carey answered that he asked Child if he had been drinking but that he could not recall what other questions he asked Child. The State followed up with the questions, "Did [Child] give you any indication to what he'd been drinking?" and "Did [Child] give you any indication as to when the last time he had a drink was?" Deputy Carey responded to both questions that he could not recall Child's answers, and the State asked if Deputy Carey's report would refresh his recollection. Deputy Carey testified that he did not write a report but that "everything should be on [the] video."

**{10}** When the State moved to introduce Deputy Carey's dashboard camera video, Child objected to the admission of any statements Child made prior to being advised of his *Miranda* rights. The court stated that it would continue its ruling as previously given and permitted the State to play the video. The video revealed that after Deputy Carey learned Child's age, but before he advised Child of his right to remain silent, Deputy Carey asked Child two questions regarding how much alcohol he had to drink and when he drank it. Child gave two statements in response to Deputy Carey's questions, specifically answering that he had consumed "three cans" approximately "fifteen [to] thirty minutes ago." Deputy Carey then advised Child of his *Miranda* rights, which Child stated he understood. This portion of the video drew an objection from Child. After the video was played, the district court noted that Deputy Carey had asked Child two questions after learning Child's age but before Deputy Carey's advisement. The district court immediately instructed the jury to disregard Child's statements in response to those questions, explaining that they must not consider those statements as evidence in the case.

**{11}** The prosecutor then continued her direct examination of Deputy Carey, during which the following exchange occurred:

> State: After reviewing that video, did you ask [Child] how much he had to drink that night?

4

Carey: Yes.

State: Okay. After he was *Mirandized*?

Carey: I think it was before I *Mirandized* him.

State: Okay. Did you ask him after he was *Mirandized* how much he had been drinking?

Child's objection to that question was overruled, and the court allowed the State's questioning to continue:

State: So, after you *Mirandized* [Child], did he ever make any statements as to how much he had been drinking?

Carey: I believe so, yes.

State: Okay. And do you recall after watching the video, what did he tell you?

Carey: Just the three beers.

State: Okay. And do you recall after watching the video how long ago he stated he had been drinking?

Carey: Thirty minutes prior to us contacting him.

**{12}** After Deputy Carey's testimony and outside the presence of the jury, Child moved for a mistrial on the grounds that (1) Deputy Carey asked Child questions that elicited incriminating statements "without first advising [Child] of [his] constitutional rights and securing a knowing, intelligent, and voluntary waiver" as required by Section 32A-2-14(C); and (2) the State introduced the evidence of Child's statements at trial in violation of Section 32A-2-14(D). The district court denied Child's motion and stated it would issue a curative instruction to the jury if Child requested it.

**{13}** Before reconvening the jury and proceeding with the trial, the court offered to hear testimony from Deputy Stevens for the purpose of revisiting the issue of whether Child's waiver was knowing, intelligent, and voluntary. After hearing Deputy Stevens' testimony, the district court stood by its previous ruling that Child's waiver was valid.

**{14}** Prior to closing statements, the district court reminded the jury that it had instructed the jury to disregard a statement by Child on Deputy Carey's video recording. The court then read a curative instruction regarding that issue, stating that the jury must "disregard any and all statements made by [Child] to the police after the officers learned his age, but prior . . .

5

to them *Mirandizing* him or reading him the juvenile constitutional rights. These statements are not to be considered by you for any purpose." The jury convicted Child of DWI, but it acquitted him of possession of drug paraphernalia. Child raises three issues on appeal that we address in turn.

## CHILD'S WAIVER OF HIS STATUTORY RIGHT TO REMAIN SILENT

**{15}**    Child first challenges the admissibility of inculpatory statements that he made after he was advised of his right to remain silent. Child argues that the district court's admission of this evidence violated Section 32A-2-14(D) because the State failed to demonstrate that Child knowingly, intelligently, and voluntarily waived his right. Child primarily claims that his impaired physical and mental condition, caused by his intoxication, inhibited his ability to validly waive his right. He also advances several other grounds in support of his argument, namely that (1) he was detained by police officers and not free to leave; (2) Deputy Carey hurried through his advisement to Child and did not slow down to confirm that Child understood his right; (3) Deputy Carey asked Child questions that he knew were likely to elicit incriminating responses; (4) Deputy Carey refused Child's request to call his parents; and (5) the district court's determination that Child validly waived his right was based, in part, on the court's mistaken belief that Child lied about his age to Deputy Carey.

### Standard of Review

**{16}**    Illegally obtained evidence is subject to a suppression motion to exclude the evidence from trial. *Cf. City of Santa Fe v. Marquez*, 2012-NMSC-031, ¶ 27, 285 P.3d 637 ("A motion to suppress presupposes that the evidence was illegally obtained." (emphasis, alteration, quotation marks, and citation omitted)); *see, e.g.*, *State v. Antonio T.*, 2015-NMSC-019, ¶ 31, ___ P.3d ___ (holding that the child's motion to suppress his incriminating statements should have been granted because the statements were obtained in violation of Section 32A-2-14(C) and the state failed to prove the child's waiver was valid pursuant to Section 32A-2-14(D)). An appeal of a district court's denial of a motion to suppress inculpatory statements involves mixed questions of fact and law. *State v. Gerald B.*, 2006-NMCA-022, ¶ 13, 139 N.M. 113, 129 P.3d 149. As an appellate court, we do not intrude on the district court's role as the trier of fact. *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964. "We view the facts in the manner most favorable to the prevailing party and defer to the district court's findings of fact if substantial evidence exists to support those findings." *Id.* "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Jean-Paul*, 2013-NMCA-032, ¶ 4, 295 P.3d 1072 (internal quotation marks and citation omitted). The district court's application of the law to the facts is a question of law that we review de novo. *State v. Randy J.*, 2011-NMCA-105, ¶ 10, 150 N.M. 683, 265 P.3d 734.

### Protections Under the Children's Code

**{17}**    The Fifth Amendment to the United States Constitution "serves to protect persons

in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves." *Miranda*, 384 U.S. at 467. In New Mexico, children who are subject to police questioning are statutorily entitled to greater rights under Section 32A-2-14 than those guaranteed by *Miranda. See Javier M.*, 2001-NMSC-030, ¶ 1 (concluding that Section 32A-2-14 demonstrates the Legislature's intent to afford broader rights to children than those provided in *Miranda* jurisprudence). Section 32A-2-14(C) prohibits police questioning of a child suspected of a delinquent act "without first advising the child of the child's constitutional rights and securing a knowing, intelligent and voluntary waiver." More significantly, before the State may introduce any statements made by a child at trial, the State "shall prove that the statement or confession offered in evidence was elicited only after a knowing, intelligent and voluntary waiver of the child's constitutional rights was obtained." Section 32A-2-14(D).

**{18}** Our Supreme Court held in *Javier M.* that "a child need not be under custodial interrogation" by police for the statute's protections to apply. 2001-NMSC-030, ¶ 1. "Custodial interrogation occurs when an individual is swept from familiar surroundings into police custody, surrounded by antagonistic forces, and subjected to the techniques of persuasion so that the individual feels under compulsion to speak." *Id.* ¶ 15 (alterations, internal quotation marks, and citation omitted). Rather, our Supreme Court concluded that the protections of Section 32A-2-14 also extend to a child who is "seized pursuant to an investigatory detention and not free to leave." *Javier M.*, 2001-NMSC-030, ¶ 38. "[W]hen an officer approaches a child to ask the child questions because the officer 'suspects' the child of delinquent behavior, the officer is performing an investigatory detention." *Id.* ¶ 37. The Court held that the statute's use of the term "constitutional rights" is not a reference to the "required warnings enumerated in *Miranda*." *Id.* ¶ 41. Instead, the Court held that Section 32A-2-14 requires that the child who is subject to an investigatory detention "be advised of his or her right to remain silent and that if the child waives that right, anything said can be used against [the child]." *Javier M.*, 2001-NMSC-030, ¶ 48.

**{19}** Although Section 32A-2-14 institutes these heightened statutory protections for children, the applicable test for reviewing whether a child waived his or her statutory right is the same as that of an adult. *State v. Lasner*, 2000-NMSC-038, ¶ 6, 129 N.M. 806, 14 P.3d 1282. We examine the totality of the circumstances to determine whether the State has carried its "burden of demonstrating by a preponderance of the evidence that the defendant knowingly, intelligently, and voluntarily waived the constitutional right against self-incrimination." *State v. Martinez*, 1999-NMSC-018, ¶ 14, 127 N.M. 207, 979 P.2d 718. With respect to children over the age of fourteen, Section 32A-2-14(E) codifies the totality of the circumstances test and requires that courts consider "some of the circumstances that may be particularly relevant for a juvenile" when determining whether a child's statements are admissible. *Martinez*, 1999-NMSC-018, ¶ 18. That section provides:

> In determining whether the child knowingly, intelligently and voluntarily waived the child's rights, the court shall consider the following factors:

7

(1) the age and education of the respondent;

(2) whether the respondent is in custody;

(3) the manner in which the respondent was advised of the respondent's rights;

(4) the length of questioning and circumstances under which the respondent was questioned;

(5) the condition of the quarters where the respondent was being kept at the time of being questioned;

(6) the time of day and the treatment of the respondent at the time of being questioned;

(7) the mental and physical condition of the respondent at the time of being questioned; and

(8) whether the respondent had the counsel of an attorney, friends or relatives at the time of being questioned.

Section 32A-2-14(E).

**{20}** Child was approached and questioned by Deputy Carey because he suspected Child of DWI, a delinquent act under the Children's Code. Accordingly, Child was subject to an investigatory detention that triggered the statutory protections of Section 32A-2-14. We therefore analyze the totality of the circumstances surrounding Child's questioning to evaluate whether Child knowingly, intelligently, and voluntarily waived his statutory right to remain silent. "In determining a knowing and intelligent waiver of rights, we ascertain whether [Child] was fully aware of the nature of the right he was waiving and the consequences of abandoning the right." *Martinez*, 1999-NMSC-018, ¶ 21.

**Validity of Child's Waiver**

**{21}** Applying the factors enumerated in Section 32A-2-14(E) as part of the totality of circumstances analysis, we conclude that Child knowingly, intelligently, and voluntarily waived his statutory right to remain silent. Child was sixteen years old at the time of questioning. Although the trial record does not indicate Child's educational level, our Supreme Court has held that "a child over age fifteen is unlikely to make an involuntary statement . . . after receiving *Miranda* warnings." *State v. Jonathan M.*, 1990-NMSC-046, ¶ 8, 109 N.M. 789, 791 P.2d 64. Child does not dispute that he was subject to an investigatory detention, but Child suggests that his waiver was invalid because Deputy Carey testified Child was not free to leave during questioning. We do not believe this restriction

8

indicates Child's waiver was invalid but only indicates that the statutory protections of Section 32A-2-14 apply to Child's situation. *See Javier M.*, 2001-NMSC-030, ¶ 38 ("[T]he protections of [Section 32A-2-14] are triggered . . . when a child is seized pursuant to an investigatory detention and not free to leave."). Officers conducted the DWI investigation in the public parking lot of a convenience store in plain view of store employees, traffic, and other members of the public entering and exiting the store. Further, the length of time between Child's initial contact with police and his arrest for DWI lasted only approximately twelve minutes. Even though the time of day was approximately 11:00 p.m., Deputy Stevens testified that the parking lot was well-lit by the store's lights and the lights of the police patrol cars. In addition, Deputy Carey testified that his demeanor toward Child was professional and courteous and that there was no indication that Child felt in fear of the interaction. Deputy Carey informed Child of his right to remain silent, that anything Child said could be used against him, and that Child could exercise his right to not make any statements or answer any questions. Deputy Carey asked Child if he understood the advisement, and Child answered that he did. Child argues that Deputy Carey "ran through" the advisement, failed to slow down to confirm whether Child understood his rights, and asked Child questions that he knew were likely to elicit incriminating responses. Child does not fully develop these arguments or cite any authority on these points. *See State v. Flores*, 2015-NMCA-002, ¶ 17, 340 P.3d 622 ("[This] Court has been clear that it is the responsibility of the parties to set forth their developed arguments, it is not the court's responsibility to presume what they may have intended."), *cert. granted*, 2014-NMCERT-012, 344 P.3d 988. However, to the extent Child suggests that he was "tricked[] or cajoled into a waiver[,]" evidence in the trial record fails to support such a claim. *Miranda*, 384 U.S. at 476.

**{22}** We are also not persuaded by Child's argument that his intoxication level during the time of questioning impaired his ability to validly waive his statutory right. Child points to this Court's prior holding that evidence of extreme intoxication is inconsistent with a knowing, intelligent, and voluntary waiver of rights. *See State v. Bramlett*, 1980-NMCA-042, ¶¶ 22-23, 94 N.M. 263, 609 P.2d 345 (holding that the defendant's statements were inadmissible because evidence of the defendant's extreme intoxication was not consistent with a valid waiver of *Miranda* rights), *overruled on other grounds by Armijo v. State ex rel. Transp. Dep't*, 1987-NMCA-052, ¶ 8, 105 N.M. 771, 737 P.2d 552; *see also State v. Young*, 1994-NMCA-061, ¶ 14, 117 N.M. 688, 875 P.2d 1119 (holding that the trial court must consider evidence of intoxication when the defendant's extreme intoxication was not consistent with a valid waiver of *Miranda* rights). In support of his argument, Child first cites testimony from Deputy Carey that Child had difficulty opening the door of his vehicle. Child also relies on testimony from Deputy Stevens that Child spoke in incomplete sentences due to his intoxication, stated that he was "pretty buzzed," and performed poorly on the field sobriety tests. In addition, Child claims that the results of his breath alcohol concentrations of 0.14 and 0.15 exhibited an intoxication level that detrimentally impacted his ability to validly waive his right to remain silent.

**{23}** We agree that the evidence of Child's intoxication demonstrates he could not drive

safely, and we are mindful that "voluntary intoxication is relevant to determining whether a waiver was knowing and intelligent." *Young*, 1994-NMCA-061, ¶ 14. However, we disagree that the evidence in this case compels a determination that Child was extremely intoxicated and lacked the capability to understand and waive his statutory right. In *Bramlett*, the defendant's breath alcohol concentration level was 0.23, he had difficulty walking, and police officers prolonged their detention of the defendant "for his own protection" because he was "too intoxicated to be released[.]" 1980-NMCA-042, ¶¶ 20-21 (internal quotation marks omitted). Similarly, in *Young*, the defendant's blood alcohol level was nearly four times the level necessary to establish impairment for purposes of DWI. 1994-NMCA-061, ¶ 14. Evidence of Child's intoxication stands in stark contrast to the evidence of extreme intoxication present in *Bramlett* and *Young*. When asked about Child's level of intoxication, Deputy Carey described Child as having "a little bit of slurred speech" and blood shot and watery eyes, but he testified that Child seemed to understand his questions and was not disheveled, out of control, or mentally unbalanced. Child was unable to successfully complete the field sobriety tests, but no evidence in the trial record supports a conclusion that Child was unable to walk or could not care for his own safety. Moreover, Child's breath alcohol concentration level was markedly below the levels of the defendants in *Bramlett* and *Young*. We believe that this evidence is consistent with a determination that Child knowingly, intelligently, and voluntarily waived his right to remain silent.

**{24}**     Deputy Carey denied Child's request to allow him to call his parents while he was being questioned, and Child further argues that Deputy Carey's denial runs contrary to Section 32A-2-14(E)(8) and weighs against the district court's finding of a valid waiver. Specifically, Child claims that the Legislature included Section 32A-2-14(E)(8) for the specific purpose of protecting children from pressures intrinsic to the interrogation atmosphere. Even though we consider this factor in reviewing the totality of the circumstances, Child misconstrues our well-established application of the test. The statutory factors set forth in Section 32A-2-14(E) "emphasiz[e] some of the circumstances that may be particularly relevant for a juvenile," but "presence or absence of an attorney, friend, or relative at the questioning . . . is merely one of the factors relevant in determining the validity of a waiver of rights[.]" *Martinez*, 1999-NMSC-018, ¶¶ 18, 20. We are not convinced that the inability of Child to have his parents present during his investigatory detention overcomes other factors that suggest Child's waiver was knowing, intelligent, and voluntary.

**{25}**     Finally, Child argues that the district court based its ruling of a valid waiver on the court's incorrect belief that Child lied about his age at the time of questioning. After viewing Deputy Carey's video, the district court, in its second ruling on the validity of Child's waiver, stated that Child "fabricated his age" by initially telling Deputy Carey he was fifteen rather than sixteen during questioning. Child contends that the trial record fails to support the district court's finding because the court mistakenly equated Child's ability to lie with his ability to waive his right to remain silent. However, the court did not ground its determination on the validity of Child's waiver solely in its conclusion that Child was deceptive about his age. Regardless of the district court's finding regarding Child's

10

deception, the trial record nonetheless adequately establishes that Child understood his statutory right and the consequences of waiving that right. We are therefore convinced by the totality of the circumstances that Child's waiver was knowing, intelligent, and voluntary and that the district court properly denied Child's suppression motion.

**ADMISSION OF DEPUTY CAREY'S TESTIMONY**

**{26}**   Child next argues that Deputy Carey's testimony that Child stated he drank "three beers . . . thirty minutes prior to [police] contacting him" was inadmissible under Section 32A-2-14(D) and prejudiced Child. Child contends that the State intentionally elicited the improper testimony only moments after the district court viewed Deputy Carey's video and admonished the jury to disregard the statements Child made after Deputy Carey learned Child's age but before Child was advised of his right to remain silent. Child argues that the error could not be remedied by the district court's subsequent curative instruction given at the end of Child's trial to disregard Child's statements.

**{27}**   According to Child, the State's improper motive in eliciting Deputy Carey's inadmissible testimony requires our departure from the general rule that "a prompt admonition from the court to the jury to disregard and not consider inadmissible evidence sufficiently cures any prejudicial effect which might otherwise result." *State v. Newman*, 1989-NMCA-086, ¶ 19, 109 N.M. 263, 784 P.2d 1006. It is true that our courts apply a different analysis to cases in which the prosecution intentionally elicits inadmissible evidence. *State v. Armijo*, 2014-NMCA-013, ¶ 9, 316 P.3d 902. In those types of cases, "regardless of whether a [district] court admonishes the jury not to consider the testimony, [we] must determine whether there is a reasonable probability that the improperly admitted evidence could have induced the jury's verdict." *Id.* (internal quotation marks and citation omitted). The trial record in this case, however, fails to support Child's assertion that the district court issued a curative instruction related to Deputy Carey's testimony regarding Child's statements. The district court, at the close of Child's trial, instead issued a curative instruction related to Child's statements as recorded by Deputy Carey's video. On appeal, Child does not raise an issue of evidentiary error with regard to the district court's admission of the video. Therefore, in the absence of a curative instruction or prompt admonition from the district court to cure any error caused by Deputy Carey's testimony, the question of whether the State intentionally elicited the testimony is not relevant for purposes of our analysis. Rather, we must determine whether Deputy Carey's testimony was inadmissible and, if so, whether the inadmissible testimony was prejudicial or harmless to Child. *See State v. Tollardo*, 2012-NMSC-008, ¶ 25, 275 P.3d 110 ("Improperly admitted evidence is not grounds for a new trial unless the error is determined to be harmful.").

**{28}**   Child is correct that Deputy Carey's testimony that highlighted statements Child made prior to being advised of his statutory right to remain silent was inadmissible. After the jury viewed Deputy Carey's video, the district court promptly excluded Child's statements that he drank three beers approximately fifteen to thirty minutes prior to his encounter with police officers. Over Child's objection, the district court then allowed the

11

prosecutor to elicit testimony from Deputy Carey regarding those same statements, specifically that Child stated he had consumed "three beers . . . thirty minutes prior to [police] contacting him." Child's statements were elicited before he was advised of his statutory right to remain silent, and the improper admission of this testimony violated Section 32A-2-14(D). Therefore, we turn to whether Deputy Carey's inadmissible testimony was prejudicial or harmless to Child.

**{29}** For purposes of harmless error review, we apply a non-constitutional harmless error analysis when the error implicates a violation of statutory law. "[A] non-constitutional error is harmless when there is no reasonable probability the error affected the verdict." *Tollardo*, 2012-NMSC-008, ¶ 36 (emphasis, internal quotation marks, and citation omitted). We conduct our harmless error analysis on a case-by-case basis and "evaluate all of the circumstances surrounding the error." *Id.* ¶¶ 43-44. These circumstances necessarily encompass "an examination of the error itself, which depending upon the facts of the particular case could include an examination of the source of the error and the emphasis placed upon the error." *Id.* ¶ 43. We may also consider properly admitted evidence of a defendant's guilt "since it will provide context for understanding how the error arose and what role it may have played in the trial proceedings[.]" *Id.* The circumstances of a particular case will also dictate our examination of the error in the context of "the importance of the erroneously admitted evidence in the prosecution's case, as well as whether the error was cumulative or instead introduced new facts." *Id.* (alterations, internal quotation marks, and citation omitted).

**{30}** Child concedes on appeal that the evidence at his trial was generally sufficient to support his conviction for DWI. However, our inquiry for purposes of harmless error review "is not to determine whether the evidence was sufficient to support a conviction." *Armijo*, 2014-NMCA-013, ¶ 16. We instead determine whether there is a reasonable probability that Deputy Carey's inadmissible testimony affected the jury's verdict. *See Tollardo*, 2012-NMSC-008, ¶ 57 ("In the final analysis, determining whether an error was harmless requires reviewing the error itself and its role in the trial proceedings, and in light of those facts, making an educated inference about how that error was received by the jury."). The jury was instructed at trial that to return a guilty verdict it must find that Child "operated a motor vehicle" and "[w]ithin three (3) hours of driving, [Child] had an alcohol concentration of eight one-hundredths (.08) grams or more[.]" UJI 14-4503 NMRA. The State's properly admitted evidence pertaining to these findings consisted of Child's breath alcohol test results and the deputies' testimony regarding signs of Child's intoxication, his performance on the field sobriety tests, and incriminating statements Child made after he waived his right to remain silent.

**{31}** Deputy Carey testified that, upon approaching Child's vehicle, he detected the odor of alcohol and Child appeared to be intoxicated. Deputy Stevens also testified that he smelled alcohol on Child's breath as he spoke, that Child's eyes were bloodshot and watery, and that Child slurred his speech. Child also performed poorly on the field sobriety tests, particularly with regard to the tests that gauge physical balance, and Deputy Stevens testified

12

that Child's performance was the result of his intoxication. Further, Child told Deputy Stevens that he was "pretty buzzed," that George had given him alcohol and forced Child to drive, and that Child and George drove to the convenience store "to do a beer run." Finally, the results of Child's breath alcohol tests established Child's alcohol concentration level of 0.14 and 0.15, which exceeds the limit of .08 specified in Section 66-8-102 and the jury instruction. In light of this evidence, there is no reasonable probability that the admission of Deputy Carey's testimony regarding the statements Child made prior to being advised of his right to remain silent affected the verdict. Accordingly, the district court's error in admitting Deputy Carey's inadmissible testimony regarding statements Child made before he was advised of his statutory right to remain silent was harmless.

**{32}** We make one final observation in connection with the course of the proceedings below. In evaluating all the circumstances surrounding the error, we note that the genesis of the error was the district court's admission of Deputy Carey's dashboard camera video without previously determining whether Child made inadmissible statements. With regard to the video, the trial record reflects the district court's frustration with the timing of Child's suppression motion as well as the inability of both Child and the State to pinpoint any statements that should be suppressed. Although the error before us in this appeal was ultimately harmless, the situation underscores the importance of both (1) the requirement that defense counsel make timely pretrial suppression motions; and (2) the State's duty to ensure compliance with Section 32A-2-14(D) before introducing evidence at trial that is inadmissible under the Children's Code.

## REQUEST FOR JURY INSTRUCTION ON DURESS

**{33}** Lastly, Child argues that the district court erred in refusing to provide the jury with his requested instruction on duress, UJI 14-5130 NMRA. Child's proffered instruction was based on the theory that Child drove to the store under threat of harm from George, who testified that he "forced" Child to drive him. Child reiterates this same line of reasoning on appeal, contending that George's testimony constituted sufficient evidence that warranted the instruction. "The propriety of jury instructions given or denied is a mixed question of law and fact" that we review de novo. *State v. Lucero*, 2010-NMSC-011, ¶ 11, 147 N.M. 747, 228 P.3d 1167 (internal quotation marks and citation omitted). "When considering a defendant's requested instructions, we view the evidence in the light most favorable to the giving of the requested instruction." *State v. Romero*, 2005-NMCA-060, ¶ 8, 137 N.M. 456, 112 P.3d 1113. The district court's refusal of a defendant's requested jury instruction that is supported by the evidence at trial is reversible error. *State v. Brown*, 1996-NMSC-073, ¶ 34, 122 N.M. 724, 931 P.2d 69.

**{34}** Duress is a valid defense that is available to defendants in DWI cases. *State v. Rios*, 1999-NMCA-069, ¶¶ 1, 28, 127 N.M. 334, 980 P.2d 1068. Defendants who raise the defense of duress are "*not* attempting to disprove a requisite mental state" but "are instead attempting to show that they ought to be excused from criminal liability because of the circumstances surrounding their intentional act." *Id.* ¶ 12. The duress defense excuses or justifies a

defendant's conduct based on the principle that the defendant committed the crime "in order to avoid a harm of greater magnitude." *State v. Gurule*, 2011-NMCA-042, ¶ 19, 149 N.M. 599, 252 P.3d 823 (alteration, internal quotation marks, and citation omitted). When applying the duress defense to the strict liability crime of DWI, our courts have adopted a "narrowed articulation" of the defense "so as not to vitiate the protectionary purpose of the strict liability statute." *Rios*, 1999-NMCA-069, ¶¶ 16-17 (alteration, internal quotation marks, and citation omitted). Consequently, to be entitled to a jury instruction on the defense of duress, a defendant must present sufficient evidence that "(1) [he or she] acted under unlawful and imminent threat of death or serious bodily injury, (2) he [or she] did not find himself [or herself] in a position that compelled him [or her] to violate the law due to his [or her] own recklessness, (3) he [or she] had no reasonable legal alternative, and (4) his [or her] illegal conduct was directly caused by the threat of harm." *Id.* ¶ 25 "The keystone of the analysis is that the defendant must have no alternative—either before or during the event—to avoid violating the law." *Rios*, 1999-NMCA-069, ¶ 17 (alteration, internal quotation marks, and citation omitted).

**{35}** In this case, the district court denied Defendant's request for the instruction on the ground that Child did not present evidence that would support that he "feared immediate great bodily harm."[1] Although the district court used the terms of the uniform jury instruction rather than the four-factor test articulated in *Rios*, its determination clearly correlates with the first factor, and it ultimately reached the correct result. George testified that he "forced" Child to drive him to the store that night to buy more alcohol. He further testified that he raised his voice and told Child to "hurry" before Child's parents returned home. George admitted that he "pressured" Child, but he also testified that he never made physical contact with Child or threatened Child with physical force or a weapon. We are not persuaded that this testimony supports Child's argument that Child acted under unlawful and imminent threat of death or serious bodily injury.

**{36}** Child does not provide any other arguments, record citations, or legal authority in his brief in chief that address the remaining factors necessary to make a prima facie showing that he was entitled to a jury instruction on the defense of duress. *See Rios*, 1999-NMCA-069, ¶ 22 ("Defendant [is] required to present evidence regarding each element of the prima facie case [for a duress instruction]."); *see also Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to review undeveloped arguments with no citations to the record or legal authority). Accordingly, we hold the district court properly denied Child's request for a jury instruction on duress.

**CONCLUSION**

---

[1]The uniform jury instruction for the defense of duress provides that "[i]f the defendant feared immediate great bodily harm to himself or another person if he did not commit the crime and if a reasonable person would have acted in the same way under the circumstances, [the jury] must find the defendant not guilty." UJI 14-5130.

14

**{37}** For the foregoing reasons, we affirm Child's conviction for DWI.

**{38}** **IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**LINDA M. VANZI, Judge**